## THOMAS CASEY *v.* GLORIA A. CASEY
### (AC 23934)

Lavery, C. J., and Schaller and McLachlan, Js.

Argued January 20—officially released April, 6, 2004

*William C. Franklin,* for the appellant (defendant).

*James Ryan Mulvey,* for the appellee (plaintiff).

*Opinion*

McLACHLAN, J. This case represents one of the very rare matrimonial cases in which a disappointed party successfully argues that the financial orders entered incident to a dissolution action exceed the broad discretion of the trial court. The defendant, Gloria A. Casey, claims that the financial orders are inequitably favorable to the plaintiff, Thomas Casey, because they assigned him an exceedingly high portion of the marital assets while assigning her an exceedingly high portion of the marital debt and liabilities. The defendant argues specifically that (1) the orders are logically inconsistent with the facts found by the court, (2) the court improperly refused to make an equitable division of the portion of the respective parties' vested pension plans that accrued during the term of the marriage and (3) the court failed to enter orders with respect to certain personal property that was contested at trial and exceeded its authority in the orders that it did enter. We reverse the judgment of the trial court with respect to the first and third claims and remand the matter for a new trial as to the financial orders.

The court's findings may be summarized as follows. The parties began a romantic relationship in the early 1990s and, in January, 1995, the plaintiff moved into the defendant's Wilton home that she shared with her two children from a previous marriage. Both parties were and are currently employed with American Airlines, the plaintiff as a senior pilot and the defendant as a flight attendant. In addition to her salary, the defendant also received rental income from an apartment on her Wilton property and received unallocated alimony and support from her former husband. Shortly after the plaintiff moved into the defendant's home, it was appraised at $535,000 and had equity of approximately $400,000. The home was encumbered by a first mortgage of approximately $75,000, requiring a monthly pay-

ment of principal and interest of $600, and a second mortgage to her former husband in the amount of $60,160, on which no monthly payments were required.

Although the plaintiff had a pension with American Airlines, he owned no real estate and had no savings or investments. The only significant assets the plaintiff brought to the relationship were two airplanes, a Beech aircraft and a Grumman Albatross aircraft, both financed and encumbered by loans.

In June, 1995, the defendant refinanced her Wilton home with a new first mortgage loan in the amount of $265,000 and paid off the existing two mortgage loans with the proceeds of the refinance. The balance of $131,000 "inured directly to the benefit" of the plaintiff, who used the money to make improvements to and to pay off loans that encumbered his airplanes.[1]

The parties were married in June, 1996. Approximately two years into the marriage, the defendant quitclaimed a one-half interest in the Wilton home to the plaintiff. Shortly thereafter, the parties decided to sell the Wilton home and to acquire a new home in Sherman. In 1999, the Wilton home was sold for $466,020. The parties then purchased the Sherman home for $465,000, subject to a mortgage loan in the amount of $372,000. As a result of the foregoing sale and purchase transactions, approximately $114,000 in cash was generated, which was deposited into the plaintiff's solely owned bank account. With those funds, the plaintiff purchased a 1978 Rolls Royce automobile, a pontoon boat and a Jaguar automobile. The balance of $27,000 was invested in the Sherman home and in the plaintiff's airplanes.

Shortly after the parties moved into the Sherman home, the defendant discovered that the plaintiff had

---

[1] That sum also included approximately $51,000 in cash that was deposited directly into the plaintiff's solely owned bank account.

engaged in sexual infidelities with other women during the course of the marriage without the defendant's knowledge or consent. In February, 2001, the plaintiff left the marital residence, believing that the marriage had irretrievably broken down. At or about that time, the plaintiff took the Rolls Royce, Jaguar and pontoon boat from the Sherman home. In May, 2001, a dissolution action was filed by the plaintiff.

In its memorandum of decision, the court made several specific factual findings that purportedly formed the predicate for its financial orders. The court found that at the time of the dissolution, the plaintiff was fifty-two years of age and still employed as a senior pilot with American Airlines, earning approximately $200,000 a year, and that the defendant was fifty-four years of age and earning approximately $50,000 a year as a flight attendant. The court further found that the Sherman home had a fair market value of $725,000, subject to a mortgage loan with a balance of approximately $360,000, resulting in a net equity of $365,000.[2] The court further found that the Beech aircraft had a value of $84,000 and that the Albatross aircraft had a value of $245,000, although the plaintiff had spent significantly larger sums on maintenance and improvements to the Albatross between 1995 and the date of dissolution. In that respect, the court specifically found that the "exorbitant amount of money spent on the airplanes . . . was the primary reason for the various increases in the mortgages" prior to and during the parties' marriage.[3] As to the breakdown of the marriage, the court concluded that although both parties' conduct ulti-

[2] Although the net equity figure was the estimated market value of the home less the balance due on the mortgage loan, that did not include any expenses of sale, which the court could have considered because the defendant apparently did not have sufficient resources to continue to reside there.

[3] The plaintiff himself testified that during his relationship with the defendant, he spent in excess of $400,000 on his airplanes.

mately caused the breakdown, the plaintiff's sexual infidelities initiated the breakdown and were the primary cause of the failure of the marriage.

In its financial orders, the court did not award alimony or attorney's fees but did distribute the parties' principal assets. The court awarded the defendant all right, title and interest to the Sherman home, subject to existing encumbrances including the mortgage, taxes and insurance. The court also awarded the defendant a 1995 Jeep Cherokee, valued at $5000. The court awarded the plaintiff all right, title and interest to both airplanes, subject to any encumbrances. The plaintiff was also awarded the 1978 Rolls Royce and the pontoon boat, with respective values of $14,000 and $4450.[4] With regard to the parties' retirement accounts, the court ordered that the parties retain their own accounts. Last, the court ordered the parties to resolve any issues pertaining to the distribution of personal property through mediation with the family relations division of the Superior Court, but expressly limited its order to eleven items included in a list of property supplied by the plaintiff in his brief. Those eleven items represented only a small portion of the total personal property identified by both the plaintiff and the defendant in their respective financial affidavits and briefs, and no order was entered with respect to the balance of the personal property at issue.

The defendant then filed a motion to reargue, pursuant to Practice Book § 11-11, contending that the financial orders issued by the court were inequitable.[5] The court denied the motion, and this appeal followed.

[4] During the pendency of the dissolution action, the plaintiff sold the Jaguar automobile and retained all proceeds, in apparent violation of Practice Book § 25-5.

[5] The defendant claimed specifically that the plaintiff was awarded approximately 64.7 percent of the nonpension marital assets while she was awarded 82.2 percent of the marital debt. She further argued that given the mortgage debt on the Sherman home and her income, the court's order ensured that the only significant asset awarded to her would have to be sold at a distress

Our standard of review for financial orders in a dissolution action is clear. The trial court has broad discretion in fashioning its financial orders, and "[j]udicial review of a trial court's exercise of [this] broad discretion . . . is limited to the questions of whether the . . . court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action." (Internal quotation marks omitted.) *Gilbert* v. *Gilbert*, 73 Conn. App. 473, 484, 808 A.2d 688 (2002). That standard of review reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties. See *Parley* v. *Parley*, 72 Conn. App. 742, 745, 807 A.2d 982 (2002). As pithily stated by Justice Parskey, "in matters of this sort our role of necessity is not to work the vineyard but rather to prune the occasional excrescence." *Koizim* v. *Koizim*, 181 Conn. 492, 498, 435 A.2d 1030 (1980).

I

The defendant first claims that the court's financial orders were logically inconsistent with its factual findings and that the court, therefore, could not reasonably have concluded as it did. In particular, the defendant claims that the court inequitably awarded her the mari-

sale or lost through foreclosure in the near future when the mortgage proceeds into default. The defendant claimed also that the inequity was further exacerbated by the court's failure to divide that portion of the parties' pensions that accrued during the term of the marriage. The total amount accruing to the parties' pension plans during the marriage was $534,997. In ordering both parties to keep their respective accounts, the court essentially awarded the plaintiff almost 92 percent of those pension assets, leaving the defendant only 8 percent.

tal residence, subject to a large mortgage loan, despite the express finding that substantial proceeds from the various mortgages had been utilized to make expenditures toward the plaintiff's two airplanes, which were awarded to him. We agree that the financial orders are logically inconsistent with the facts found by the court.

Our jurisprudence requires the trial court to consider all the statutory criteria set forth in General Statutes § 46b-81 in determining how to distribute parties' assets in a dissolution action.[6] *Burns* v. *Burns*, 41 Conn. App. 716, 720, 677 A.2d 971, cert. denied, 239 Conn. 906, 682 A.2d 997 (1996). We do not, however, require that courts ritualistically recite the criteria they considered, nor are they bound to any specific formula respecting the weight to be accorded each factor. See id., 720–21.

The court properly made specific factual findings as to the assets and liabilities each party brought to the marriage and certain other relevant factors existing at the time of the dissolution, all of which are supported by the evidence. The court found that prior to the marriage, the defendant's Wilton home had approximately $400,000 in equity, subject to $135,160 in mortgage loans of which only $75,000 required current payments, and that the property contained an income producing rental

---

[6] General Statutes § 46b-81 provides in relevant part: "(a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . .

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

unit. The court further found that the mortgage debt on the Wilton home, as well as on the Sherman home, had been increased during the marriage, and that $245,000 of the increased debt inured directly to the benefit of the plaintiff, which he used to make expenditures toward his airplanes and to purchase the Rolls Royce automobile, the Jaguar automobile and a boat. The court made the specific finding that the "exorbitant amount of money spent on the airplanes . . . was the primary reason for the various increases in the mortgages" and that any increased value of the airplanes during the term of the marriage did not correspond with the significantly larger sums that were spent on them. The court also determined that the plaintiff had an earning capacity four times that of the defendant and that the plaintiff's sexual infidelities during their relationship were the primary cause of the breakdown of the marriage.

Applying those factual findings to the statutory considerations set forth in General Statutes §§ 46b-81 and 46b-82, we cannot reconcile the court's financial orders with its findings. We find no support in the statutory criteria for permitting the defendant to leave the marriage, no matter how brief in duration, saddled with a sizeable mortgage debt, when the proceeds of the increased debt inured almost exclusively to the plaintiff's benefit and when the plaintiff was awarded the property that enjoyed an appreciation in value and net equity as a result of the mortgage debt. That is particularly true when, as here, the evidence revealed that the defendant would be unable to make the monthly payments and, therefore, faced the daunting prospect of defaulting on the mortgage or selling the property in the near future. We conclude that the financial orders were logically inconsistent with the facts found and that the court could not reasonably have concluded as it did. A new hearing on the financial orders is necessary.

## II

The defendant next claims that the court improperly failed to divide equally the portion of the parties' pensions that accrued during the term of their marriage.[7] We disagree.

Prior to the date of the marriage, both the plaintiff and the defendant possessed vested retirement accounts with American Airlines that continued to be funded during the term of the marriage. The parties stipulated at trial as to the value of that portion of each party's vested pension that accrued during the term of the marriage. The parties stipulated that the plaintiff's pension account had increased during the marriage by $489,687 and the defendant's by $45,310.[8] Declining to divide equally the combined value of the pension plans that accumulated during the marriage, the court ordered that both parties retain their own accounts. The defendant asserts that the order was inequitable because it essentially awarded the plaintiff almost 92 percent of the combined sum, leaving the defendant only 8 percent.

Pension benefits often are among the most valuable assets that parties possess when a marriage ends, and our courts have accordingly classified such benefits as property pursuant to § 46b-81 and divided them incident to a dissolution. See, e.g., *Krafick* v. *Krafick*, 234 Conn. 783, 793, 663 A.2d 365 (1995). It is equally well settled, however, that there is no set formula the court is obligated to apply when dividing the parties' assets and that

[7] Although we concluded in part I of this opinion that further proceedings are necessary with respect to the financial orders and that the court's order concerning the parties' pensions was a component thereof, we nevertheless address the claim as to the pensions, as it is likely to recur at a new hearing.

[8] We note that the defendant makes no claim with respect to any portion of the plaintiff's pension that accrued prior to the date of the marriage and claims as a marital asset only that portion that accrued during the term of the marriage.

the court is vested with broad discretion in fashioning financial orders. See, e.g., *Lopiano* v. *Lopiano,* 247 Conn. 356, 363–64, 752 A.2d 1000 (1998). In accordance with that discretion, the court is free to fashion its financial orders either to assign interests in the parties' pensions or, as it did here, to order that the pensions remain with the respective parties. We conclude that the court was not obligated to divide equally, or in any manner, the portion of the parties' pensions that accrued during the term of the marriage.

### III

The defendant claims finally that the court failed to enter any orders with respect to many items of the personal property that were identified in both parties' financial affidavits. The defendant further claims that the court exceeded its jurisdictional authority by ordering the parties to mediate their property claims with the family relations division. We agree that the court was required to enter orders with respect to all of the contested property but disagree that it lacked authority to refer the distribution issue to mediation.

At trial, both parties submitted financial affidavits identifying jointly owned personal property. The plaintiff's list identified a personal computer, sculpture, painting, and miscellaneous books and records, which the plaintiff estimated to have a total value of $30,900. The defendant's financial affidavit listed certain furniture, jewelry, china and fur, to which she assigned an estimated value of $40,000.

In its orders, the court stated: "The parties are ordered to resolve the issue of any claims of personal property through mediation with the family relations division of the Superior Court. The items of personal property are limited to those items set forth in the plaintiff's list of property on page thirteen of his brief, items A through K, inclusive."

We first address the defendant's claim that the court lacked the authority to refer the personal property issues to the family relations division for mediation. We have consistently held that the trial court is without jurisdiction to delegate the authority to resolve divisions of personalty in dissolution actions. See *Valante* v. *Valante*, 180 Conn. 528, 532–33, 429 A.2d 964 (1980). The rendering of such judgments is exclusively a judicial function and cannot be undertaken by domestic relations officers. See id. Here, however, the court did not order family relations to resolve the property claims, but merely directed the parties to mediate the claims through the division, a procedure specifically allowed under *Valante* and Practice Book § 25-69 (b), and often utilized by trial courts in dissolution actions. We conclude, therefore, that it was a proper exercise of the court's authority to refer the parties' personal property claims to mediation with the family relations division.

We now turn to the court's failure to enter orders dividing the personal property that was contested by the parties. It is axiomatic that when parties submit an issue to the court for resolution, they are entitled to have that issue considered, absent jurisdictional defects or other substantive impairments. Although, in the present case, the parties submitted financial affidavits and memoranda explicitly identifying the contested items of personal property, which the parties agreed were of substantial economic value, the court's order failed to address many of those items and thereby relegated their ownership to a state of perpetual limbo. That result is untenable.

Having concluded that the court's partial disposition of the parties' personal property was improper, we turn to the issue of fashioning an appropriate remedy. Concerning part I of this opinion, our determination that the financial orders were logically inconsistent with the

facts found necessitates a reversal of the judgment and a remand of the matter to the trial court of all the financial orders that were entered. With respect to the personal property distribution orders, which are part of those financial orders, we reverse the court's property distribution orders and direct the court to determine any outstanding disputes with respect thereto.[9]

The judgment is reversed only as to the financial orders and the matter is remanded for further proceedings to enable the court to enter new financial orders.

In this opinion the other judges concurred.

---

[9] We note for clarity that our remand of the financial orders is not, in any way, based on the reasoning advanced by the defendant that an impropriety in the personal property orders necessitates a retrial of all of the financial orders because such orders are part of what is often referred to as the "carefully crafted mosaic" that comprises financial orders in a dissolution action. See, e.g., *Ehrenkranz* v. *Ehrenkranz*, 2 Conn. App. 416, 424, 479 A.2d 826 (1984). Under the mosaic doctrine, financial orders should not be viewed as a collection of single disconnected occurrences, but rather as a seamless collection of interdependent elements. Consistent with that approach, our courts have utilized the mosaic doctrine as a remedial device that allows reviewing courts to remand cases for reconsideration of all financial orders even though the review process might reveal a flaw only in the alimony, property distribution or child support awards. See, e.g., *Krafick* v. *Krafick*, supra, 234 Conn. 806; *Sunbury* v. *Sunbury*, 210 Conn. 170, 173–75, 553 A.2d 612 (1989).

Although the mosaic doctrine has found favor in our courts, it is not without its limits. "Every improper order . . . does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors." *Smith* v. *Smith*, 249 Conn. 265, 277, 752 A.2d 1023 (1999). In our view, the personal property distribution orders at issue here are not so linked, but rather are severable from the other financial orders. Our remand of the financial orders, therefore, is based on the reasoning set forth in part I of this opinion and not on the notion that an impropriety in the personal property distribution orders taints the remaining financial orders. Put differently, if the claim challenging the personal property orders stood alone on appeal, our remand would not encompass all of the financial orders, but would be limited to only the personal property orders claimed to be improper.