## ROBERT N. DEES *v.* ANITA F. DEES
### (AC 25891)

Dranginis, Gruendel and Freedman, Js.

Argued September 19, 2005—officially released January 3, 2006

*Anita F. Dees*, pro se, the appellant (defendant).

*Gary Traystman*, for the appellee (plaintiff).

*Opinion*

DRANGINIS, J. The defendant, Anita F. Dees,[1] appeals from the judgment of dissolution rendered by the trial court, claiming that the court improperly (1) calculated her potential income for purposes of child support, (2) failed to award her an equitable portion of the retirement savings account held in the name of the plaintiff, Robert N. Dees, (3) imputed to her the entire amount of an annuity payable to her and her adult son from a prior marriage for purposes of determining child support and (4) awarded alimony for an insufficient period of time. We affirm the judgment of the trial court.

The court found the following facts. The parties had intermarried at Mystic in 1992, and the marriage had broken down irretrievably. There are two minor children of the marriage, twins who were born prematurely on October 11, 1993. The parties' son suffered no ill effects from his premature birth, but their daughter is severely physically handicapped with cerebral palsy and is confined to a wheelchair.[2] The plaintiff, age fifty, is employed as an engineer, earning an annual salary of $129,000 per year plus a bonus of approximately $12,000. The defendant is fifty-one. She derives income from a lifetime annuity of $20,000 per year and $100 a week in rent from a niece who lives with her.

Although the plaintiff argued at trial that the defendant had an earning capacity of $40,000 because she was graduated from both college and law school, the court imputed to her an annual earning capacity of only $15,000 because she is the primary caretaker of the parties' disabled child. The defendant's earning capacity is limited by her child care responsibilities, which

---

[1] The defendant is a former member of the bar of Oklahoma and represented herself on appeal.

[2] The parties testified that their daughter has normal intelligence and is in a mainstream classroom.

restrict the amount of time she has available for employment. With her imputed earning capacity of $15,000, plus her annuity and rental income, the defendant has a net weekly income of approximately $750. The plaintiff has a net weekly income of $1843. The court ordered the plaintiff to pay child support of $395 per week in accord with the child support guidelines and to pay the defendant alimony of $400 per week for a term of seven years, nonmodifiable as to term only. The court also valued and divided the parties' assets.[3] The court retained jurisdiction over this matter for purposes of entering future educational support orders pursuant to General Statutes § 46b-56c. The court rendered judgment of dissolution on August 23, 2004.

"Our standard of review for financial orders in a dissolution action is clear. The trial court has broad discretion in fashioning its financial orders, and [j]udicial review of a trial court's exercise of [this] broad discretion . . . is limited to the questions of whether the . . . court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action. . . . That standard of review reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding the dissolution action, including such factors as the demeanor and attitude of the parties." (Internal quotation marks omitted.) *Izard* v. *Izard*, 88 Conn. App. 506, 507–508, 869 A.2d 1278 (2005). As part of our review of the defendant's claims, we have reviewed the trial transcript and the exhibits.[4]

[3] The court also entered orders pertaining to visitation, medical insurance and communication, among other things, related to the parties' children. Those orders are not at issue here.

[4] It is not the function of this court, or any appellate court, to make findings of fact. In reviewing the defendant's brief and the transcript, however, we noted significant discrepancies of fact between the court's findings, which

## I

The defendant's first claim is that the court improperly calculated her potential income for purposes of determining child support. We assume that the defendant is referring to the earning capacity the court imputed to her. We conclude that the court did not abuse its discretion in awarding the defendant child support.

In granting the dissolution and making financial awards, the court considered the statutory guidelines. The court noted that the plaintiff suggested, in his proposed orders, that because the defendant is well educated, having both undergraduate and law degrees, she had an earning capacity of $40,000 per year. The court, however, found that the defendant's earning capacity was limited by the amount of time she devotes to the special needs of the parties' handicapped daughter. To that end, the court imputed an earning capacity of only $15,000 per annum to the defendant.

"The guidelines utilized to determine child support payments are set forth in § 46b-215a-1 et seq. of the Regulations of Connecticut State Agencies. The guidelines are predicated upon the concept that children should receive the same proportion of parental income that they would have received had the family remained intact. Child Support and Arrearage Guidelines, Preamble, § (c), pp. ii-iii. Toward that end, the guidelines are

are supported by the evidence, and the representations made by the defendant in her brief. For example, the defendant testified that her daughter suffers from cerebral palsy and needs a wheelchair or walker to facilitate her mobility. She also testified that the child can partially dress herself and walk down stairs with assistance. In her brief, the defendant represented that her daughter is a quadriplegic. To be sure, the parties' daughter is significantly handicapped due to cerebral palsy and requires a substantial amount of assistance with her activities of daily living. We in no way diminish the child's needs, but there is no evidence that the child is a quadriplegic. We expect parties to represent facts accurately.

income driven, rather than expense driven. At each income level, the guidelines allocate a certain percentage of parental income to child support. The percentage allocations contained in the guidelines aim to reflect the average proportions of income spent on children in households of various income and family sizes, and contain a built-in self-support reserve for the obligor. Id., §§ (c) and (d), pp. ii-iii. The result is that the guidelines incorporate an allocation of resources between parents and children that the legislature has decided is the appropriate allocation. Consequently, our interpretation of the guidelines must seek to preserve this allocation." (Internal quotation marks omitted.) *Bishop* v. *Freitas*, 90 Conn. App. 517, 521, 877 A.2d 922, cert. denied, 275 Conn. 931, 883 A.2d 1241 (2005).

"In a marital dissolution proceeding, the court may base financial awards on earning capacity rather than actual earned income of the parties. . . . While there is no fixed standard for the determination of an individual's earning capacity . . . it is well settled that earning capacity is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health." (Internal quotation marks omitted.) *Carasso* v. *Carasso*, 80 Conn. App. 299, 305, 834 A.2d 793 (2003), cert. denied, 267 Conn. 913, 840 A.2d 1174 (2004). "[T]he court may consider earning capacity from employment when the evidence shows that the reported amount of earnings is unreasonable. Thus, for example, when a person is, by education and experience, capable of realizing substantially greater earnings simply by applying himself or herself, the court has demonstrated a willingness to frame its orders on capacity rather than actual earnings." *Weinstein* v. *Weinstein*, 87 Conn. App. 699, 706,

867 A.2d 111, cert. granted on other grounds, 273 Conn. 934, 875 A.2d 545 (2005).

"[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Bowers* v. *Bowers*, 61 Conn. App. 75, 79, 762 A.2d 515 (2000), appeal dismissed, 258 Conn. 710, 784 A.2d 889 (2001). "The court's conclusions must stand unless they involve the application of some erroneous rule of law material to the case." Id., 80.

On appeal, the defendant has failed to explain or to demonstrate how the court abused its discretion by imputing to her an earning capacity of $15,000 per year. Contrary to the implication asserted in the defendant's brief, the court did not order her to obtain full-time employment. She argues that because she must wait for a bus that arrives at inconsistent times to come for her daughter in the morning, and because she must be at home in the afternoon when the child returns from school, she is unable to obtain gainful employment of any kind. She also claims that she needs a flexible schedule to be able to call for her daughter at school if the child were to become ill. Save for the fact that her daughter needs someone to wheel her to the bus stop, none of her arguments differs from those that any parent of a school-age child could assert as a reason not to work outside the home. The argument applies to her daughter's twin brother as well, but the defendant does not maintain that his age and needs impair her from seeking some type of employment. Furthermore, the defendant has not referred to any evidence presented at trial that only she can wheel her daughter to and from the bus stop. To the contrary, the defendant's niece testified on behalf of the defendant that the niece

had taken the child to the bus on occasion and that it is the bus driver who puts the child's wheelchair on the platform that lifts it into the bus. On the basis of the defendant's arguments on appeal and the record, we conclude that the court did not abuse its legal discretion by imputing to her an annual earning capacity of $15,000 or that the court's findings have no reasonable basis in fact. See id., 78.

## II

The defendant's second claim is that the court failed to award her an equitable portion of a retirement savings account held in the plaintiff's name. We disagree.

The court ruled at paragraph nine of its memorandum of decision: "[The] plaintiff shall retain the funds from his Fidelity 401 (k) and [individual retirement account], and the parties shall each receive one half of the proceeds remaining in the Liberty Bank checking account." On September 1, 2004, the defendant filed a motion for clarification, stating that the court in its memorandum of decision made no mention of the "plaintiff's deferred compensation plan, specifically a Verizon savings plan valued between $162,900 and $190,000 unless it was mistakenly labeled by the [c]ourt as 'the Liberty Bank checking account' . . . . Said Verizon retirement plan was accrued during the marriage and it would appear that the [c]ourt intended to divide it between the parties along with the other personal property but it was not specifically so stated and therefore the judgment is ambiguous and unclear in a key respect." The court declined to alter its judgment, explaining that the defendant had failed to present evidence relating to the Verizon savings plan and that no testimony was offered pertaining to whether such plan was accrued prior to the marriage or whether any portion of it was accrued during the marriage. For that reason, the court did not enter an order pertaining to the Verizon asset.

Pursuant to our review of the transcript, we conclude that the court did not abuse its discretion by failing to award the defendant a portion of the plaintiff's Verizon savings plan. In ruling on the defendant's motion for clarification, the court made a factual finding that the defendant had not presented any evidence with respect to the Verizon account. We will not reverse a trial court's finding of fact unless it is clearly erroneous and there is no evidence in the record to support it. See, e.g., *Mackie* v. *Hull*, 69 Conn. App. 538, 545, 795 A.2d 1280, cert. denied, 261 Conn. 916, 917, 806 A.2d 1055 (2002). The record supports the court's factual finding, and we are not left with the firm conviction that a mistake has been made. See id.

### III

The defendant's third claim is that the court improperly imputed to the defendant, for the purpose of determining child support, the entire amount of the annuity paid to the defendant and her son from a prior marriage. We decline to review that claim. The defendant has failed to cite any legal authority in support of her argument. It is a well known rule of appellate practice that parties must support their claims with law and analysis. Bold face assertions that the trial court abused its discretion or that its legal conclusions are contrary to law are not sufficient to prevail on appeal. Such claims are deemed abandoned. See *Russell* v. *Russell*, 91 Conn. App. 619, 634–35, 882 A.2d 98 (2005).

### IV

The defendant's last claim is that the court improperly awarded her alimony for an insufficient amount of time. Again, the defendant relies on the specialized needs of her daughter to argue that she is not able to obtain full-time employment outside of her home and for that reason, the court should have awarded her alimony for eleven years, rather than seven. The court's award of

time limited alimony expires when the parties' children reach the age of eighteen. The defendant is seeking alimony until her daughter is twenty-one. We are not persuaded.

At paragraph four of its memorandum of decision, the court ordered that the "plaintiff shall pay alimony in the amount of $400 per week for a term of seven years nonmodifiable as to term only and [that the alimony] shall terminate upon the expiration of the term, or defendant's remarriage, cohabitation as defined in [General Statutes § 46b-86 (b)], or the death of either party."

"[General Statutes §] 46b-82 governs awards of alimony. That section requires the trial court to consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to [General Statutes §] 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment in ordering either party to pay alimony to the other. In awarding alimony, [t]he court must consider *all* of these criteria. . . . It need not, however, make explicit reference to the statutory criteria that it considered in making its decision or make express findings as to each statutory factor. . . . In particular, rehabilitative alimony, or time limited alimony, is alimony that is awarded primarily for the purpose of allowing the spouse who receives it to obtain further education, training, or other skills necessary to attain self-sufficiency. . . . Rehabilitative alimony is not limited to that purpose, however, and there may be other valid reasons for awarding it." (Emphasis in original; internal quotation marks omitted.) *Mongillo* v. *Mongillo*, 69 Conn. App. 472, 478, 794

A.2d 1054, cert. denied, 261 Conn. 928, 806 A.2d 1065 (2002).

"The standard of review of a trial court's exercise of its broad discretion in domestic relations cases is limited to whether that court correctly applied the law and whether it could reasonably conclude as it did. . . . The trial court must consider all relevant statutory criteria in a marital dissolution action but it does not have to make express findings as to the applicability of each criteria. . . . The trial court may place varying degrees of importance on each criterion according to the factual circumstances of each case. . . .

"[Our Supreme Court] has dealt with challenges to an award of time limited alimony on numerous occasions. . . . The trial court does not have to make a detailed finding justifying its award of time limited alimony. . . . Although a specific finding for an award of time limited alimony is not required, the record must indicate the basis for the trial court's award. . . . There must be sufficient evidence to support the trial court's finding that the spouse should receive time limited alimony for the particular duration established. If the time period for the periodic alimony is logically inconsistent with the facts found or the evidence, it cannot stand." (Internal quotation marks omitted.) *Nashid* v. *Andrawis*, 83 Conn. App. 115, 122–23, 847 A.2d 1098, cert. denied, 270 Conn. 912, 853 A.2d 528 (2004).

On the basis of our review of the record, we conclude that the court did not abuse its discretion in awarding the defendant alimony for a period of seven years. The amount of alimony is nonmodifiable as to term only. The parties were married to one another for twelve years. The record discloses that the defendant previously had a career as a high school teacher and as an attorney. The seven years of alimony, we think, would

enable her to obtain the education or training necessary to revive either of those careers or to pursue another.[5]

In arguing for an additional three years of alimony, the defendant again relies on her daughter's special needs, in that she is the only person who is able to care for the child.[6] In argument at trial, she requested alimony for twelve years, which claim on appeal she changed to eleven years to correspond to the twenty-first birthdays of her children. The defendant did not provide the trial court with evidence or this court with a cogent argument that the rehabilitative purposes of alimony would be better served if it were extended to the twenty-first birthdays of her children. Tellingly, the trial court retained jurisdiction over the posteducational expenses of the children so that the daughter's special needs to accommodate a mainstream college experience can be assessed. At trial, the defendant testified that she thought her daughter would receive a lot of assistance while she is in college.[7] We therefore conclude that the court did not abuse its discretion when it awarded the defendant alimony for a period of seven years and that there is sufficient evidence in the record to support the award.[8]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] The transcript reveals that the defendant rides horses, owns three horses and is able to teach others to ride. She volunteers her time to community theater. She also has investigated starting a home business.

[6] The defendant's argument that she is the only person who is able to care for the parties' daughter is contrary to the visitation schedule to which the parties agreed and that was incorporated into the judgment of dissolution. The plaintiff has overnight, holiday and extended summer visitation with the parties' children. There is no evidence that the plaintiff is unable to care for his daughter.

[7] At trial, the defendant testified in part on cross-examination as follows:

"[The Plaintiff's Counsel]: You are asking for [the plaintiff] to pay for four full years of college when you know the court does not have the jurisdiction to do that?

"[The Defendant]: I also believe [my daughter] would get a lot of assistance and probably require no payments for college."

[8] There is nothing to preclude the defendant from seeking child support for her daughter until the young woman is twenty-one, pursuant to General Statutes § 46b-84 (c).