KRISTEN KOVALSICK *v.* JEFFREY KOVALSICK
(AC 30791)

Harper, Beach and Schaller, Js.

---

Argued September 16—officially released November 30, 2010

*Sarah D. Eldrich*, with whom was *Leslie I. Jennings-Lax*, for the appellant (plaintiff).

*Robert K. Walsh*, for the appellee (defendant).

*Opinion*

SCHALLER, J. The plaintiff, Kristen Kovalsick,[1] appeals from the judgment of the trial court dissolving

---

[1] The trial court restored the plaintiff to her former name, Kristen Marie Gonzalez. For the purposes of this appeal, however, we will refer to her by her married name.

her marriage to the defendant, Jeffrey Kovalsick, claiming that the trial court abused its discretion when it failed to award her alimony and any of the parties' assets, yet held her responsible for the bulk of the marital debt. Because we conclude that the court abused its discretion in failing to award the plaintiff time limited or rehabilitative alimony under the facts presented in this case, we reverse in part the judgment of the trial court and remand the case for a new trial on the financial orders.[2]

The following facts and procedural history are relevant to the plaintiff's claims. The parties were married in October, 2003. Their only child was born in January, 2005. They resided together in an apartment in Hamden until August, 2007, when the plaintiff and the minor child went to live with the plaintiff's mother in Massachusetts. The plaintiff commenced the divorce action in December, 2007. The court heard testimony on October 28, 2008, and issued a written decision on November 25, 2008, and an amended decision on January 22, 2009.

The court found the following facts. The plaintiff, age twenty-seven, holds a bachelor of arts degree. She has been employed in the field of early childhood development, primarily as a preschool teacher, and has worked in various day care facilities and as a family advocate for two nonprofit organizations. She earned between $13 and $15 per hour throughout the marriage, and she worked 37.5 hours per week at $13 per hour at the time of trial.[3] The defendant, age thirty-five, holds a bachelor of science degree in finance and has been employed as a trader, earning an annual base salary of $98,500 and

---

[2] This case is one of the exceptional dissolution cases in which a party successfully argues that the financial orders entered by the trial court exceed the broad discretion of the trial court. See *Casey* v. *Casey*, 82 Conn. App. 378, 844 A.2d 250 (2004).

[3] There was evidence that her hours would be reduced to thirty-three hours per week as of January 1, 2009.

an average bonus over the prior three years of $22,430 gross per annum.[4]

At trial, the plaintiff testified that she took care of the household responsibilities, including cooking, cleaning, food shopping and laundry, as well as the responsibilities of taking care of the couple's child and dog. The plaintiff also testified that, out of her salary, she was responsible for paying day care for their child and for her own personal expenses, including her cellular telephone, student loans, car payment, credit card and, for a period of time, her own car insurance. Both she and the defendant paid for other expenses related to the child, including diapers, clothing and toys. She testified that when she did not have the necessary cash, she would charge those items on her credit card and that she used her credit card to pay for holiday gifts, birthday presents, family vacations and household items for the benefit of the defendant and their child. The plaintiff testified that communication in the marriage was poor and that the defendant did not always know the extent of her reliance on credit cards.

The court concluded that the plaintiff's spending was a prime source of contention and contributed significantly to the breakdown of the marriage. Specifically, the court found that her credit card expenditures revealed a pattern of retail shopping that was well in excess of the needs of a family of three and that the purchases went to nonessential items. The plaintiff's mother paid approximately $37,000 of the plaintiff's

---

[4] The court found that the marriage had broken down irretrievably, that the parties agreed to joint legal custody of the minor child and that it was in the child's best interest that her primary residence be with the plaintiff. These orders and the orders concerning visitation are not challenged on appeal.

The court also ordered that the defendant shall pay child support and 50 percent of the weekly child care expenses, and that the child shall be the beneficiary of the defendant's medical and dental benefit plan and a life insurance policy. These orders are not challenged on appeal.

consumer debt, on the promise that the plaintiff would repay her. The court was not persuaded to divide this $37,000 liability equitably between the parties and ordered that each party would be responsible for his or her own debts.[5]

The court found that the only marital property subject to equitable distribution pursuant to General Statutes § 46b-81 was the defendant's retirement savings account, then valued at approximately $47,000, all but approximately $2000 of which was acquired during the marriage. Taking into consideration the defendant's past contributions to the plaintiff's credit card debt,[6] as well as the court's conclusion that the accrual of debt caused the breakdown of the marriage, the court ordered that the defendant retain sole ownership of his retirement savings account.

Following the dissolution of the marriage, the plaintiff intended to enroll in a two year certificate program in nursing, which would increase her earning capacity to approximately $40,000 a year. The program required both day and evening classes, and she would be unable to work while enrolled. The plaintiff, accordingly, requested alimony of $220 a week for a period of three years, or for less time if she finished the nursing program sooner. According to the financial affidavit that the plaintiff filed with the court for trial in October, 2008, even with the pendente lite alimony that she was receiving at the time she filed the affidavit, the plaintiff

[5] This order ensured that the plaintiff was responsible for other debts not mentioned in the memorandum of decision, including a Chase consolidation loan with an outstanding balance of $8200, which was pleaded in the complaint and which, the plaintiff testified, she acquired during the marriage for the benefit of the family.

[6] The court found that in February, 2006, the defendant paid an outstanding credit card balance of approximately $2500 and that in March, 2006, the defendant paid another outstanding credit card balance of $13,000. In 2007, the defendant signed over his tax refund of approximately $3020 to the plaintiff for her to apply to her credit card debt.

was not meeting her obligations, which included the payments on the debt. Nonetheless, the court found that because the plaintiff is in good health and has a four year bachelor of arts degree, bilingual skills and a good work history, an award of alimony as claimed was inappropriate.

The plaintiff filed a motion to reargue and an amended motion to reargue, which raised several issues, including the denial of alimony, the award of all of the parties' assets to the defendant, orders relating to the transportation of the minor child for the defendant's visitation and orders relating to the defendant's contribution to child care being dependent on the number of hours that the plaintiff worked. The court heard argument and modified its orders only as to the final issue such that the defendant's contribution to child care was no longer dependent on the number of hours that the plaintiff worked.[7] This appeal followed.

The plaintiff first claims that the court abused its discretion in failing to award her time limited alimony as she requested. She argues that the court abused its discretion by issuing financial orders designed to punish her for what the court perceived as her contribution to the breakdown of the marriage. The defendant, in response, relies on the broad discretion of the court in matters pertaining to alimony. We conclude that the court abused its discretion in failing to award to the plaintiff time limited or rehabilitative alimony under the facts presented in this case.

We first set forth our standard of review. "It is within the province of the trial court to find facts and draw

---

[7] The court originally ordered that the defendant needed to contribute to the day care expenses for the minor child only "so long as the [plaintiff] is using the child care for employment purposes and is working at least 33 hours per week." This effectively prevented the plaintiff from attending school even part-time. The court ordered this portion of the order to be deleted.

proper inferences from the evidence presented. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are clearly erroneous." (Internal quotation marks omitted.) *Guarascio* v. *Guarascio*, 105 Conn. App. 418, 421, 937 A.2d 1267 (2008). "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 372, 999 A.2d 721 (2010).

"[General Statutes §] 46b-82 governs awards of alimony. That section requires the trial court to consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to [General Statutes §] 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment in ordering either party to pay alimony to the other. In awarding alimony, [t]he court must consider all of these criteria. . . . It need not, however, make explicit reference to the statutory criteria that it considered in making its decision or make express findings as to each statutory factor. . . . In particular, rehabilitative alimony, or time limited alimony, is alimony that is awarded primarily for the purpose of allowing the spouse who receives it to obtain further

education, training, or other skills necessary to attain self-sufficiency." (Internal quotation marks omitted.) *Dees* v. *Dees*, 92 Conn. App. 812, 820–21, 887 A.2d 429 (2006).

With these principles in mind, we recognize that it is generally uncommon for a reviewing court to determine that the trial court has abused its broad discretion in deciding whether to award alimony and otherwise craft financial orders in a dissolution decree. "Reluctance to reverse the trial court's exercise of discretion, however, should not mean that the door is entirely closed to successful appeals in dissolution cases." (Internal quotation marks omitted.) *Gervais* v. *Gervais*, 91 Conn. App. 840, 846, 882 A.2d 731, cert. denied, 276 Conn. 919, 888 A.2d 88 (2005). Our appellate courts have reversed excessive or inequitable financial orders. See *Greco* v. *Greco*, 275 Conn. 348, 356–60, 880 A.2d 872 (2005) (reversing financial orders when 98.5 percent of marital property and substantial alimony awarded to one spouse); *Pellow* v. *Pellow*, 113 Conn. App. 122, 129, 964 A.2d 1252 (2009) (reversing financial orders when orders consumed 90 percent of paying spouse's income).

Our decision in *Casey* v. *Casey*, 82 Conn. App. 378, 844 A.2d 250 (2004), is instructive. In that case, the trial court awarded no alimony but distributed certain marital property. Id., 382. The trial court found that substantial proceeds from various home mortgages had been utilized to make " 'exorbitant' " expenditures toward two airplanes. Id., 385. Nonetheless, the trial court awarded certain airplanes to the husband and awarded the marital home, subject to a large mortgage, to the wife. Id. These awards were difficult to reconcile with the facts in light of the evidence that the husband had four times the earning capacity of the wife and the wife "would be unable to make the monthly payments and, therefore, faced the daunting prospect of

defaulting on the mortgage or selling the property in the near future." Id. We concluded that the financial orders were logically inconsistent with the facts found and ordered a new hearing on the financial orders. Id.

Similarly, this court has reversed an award of time limited alimony when the award is logically inconsistent with the facts found or the evidence before the court. See *Ippolito* v. *Ippolito*, 28 Conn. App. 745, 751–52, 612 A.2d 131 (reversing trial court when decision to limit alimony to ten years found no factual support in record), cert. denied, 224 Conn. 905, 615 A.2d 1047 (1992); *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 313–14, 536 A.2d 978 (reversing trial court when decision to award rehabilitative alimony for two years conflicted with evidence that plaintiff would need four years to finish nursing training to obtain permanent employment), cert. denied, 207 Conn. 806, 540 A.2d 374 (1988).

In the present case, we are presented with the situation in which a party appeals because the court *failed* to award the time limited alimony sought. See *Deteves* v. *Deteves*, 2 Conn. App. 590, 592, 481 A.2d 92 (1984) (award of only lump sum alimony and no periodic or rehabilitative alimony was abuse of discretion when court concluded plaintiff could " 'get some employment using her skills in embroidery and sewing' " despite finding she had never worked outside home in this country); cf. *Bornemann* v. *Bornemann*, 245 Conn. 508, 511, 539, 752 A.2d 978 (1998) (award of rehabilitative alimony to wife for eighteen months not abuse of discretion; marriage of less than four years duration and wife college educated although with limited work history); *Gamble-Perugini* v. *Perugini*, 112 Conn. App. 231, 237, 962 A.2d 192 (award of time limited alimony to wife not abuse of discretion even though wife earned modest income as real estate agent and also received property distribution), cert. denied, 291 Conn. 915, 970 A.2d 727 (2009); *Dees* v. *Dees*, supra, 92 Conn. App. 821–22

(award of time limited alimony not abuse of discretion even though wife had prior careers as high school teacher and as attorney).

The court found that the parties had "equal standing in their education level" and that the plaintiff had "additional skills" in the job market because she is bilingual. In declining to award time limited alimony, the court found that the plaintiff is "in good health, that she has obtained a four year bachelor of arts degree and has bilingual skills with a good work history . . . ." Despite the evidence of actual earnings, the court appeared to equate the parties' "equal standing in their education level" to equal earning capacity.[8] The court, however, found that the plaintiff earned only $13 to $15 per hour throughout the marriage and that she was working 37.5 hours per week at only $13 per hour at the time of trial. The plaintiff's earnings from her employment never exceeded $25,000 per year while the defendant historically earned roughly five times that amount. No evidence was presented that would tend to show that the plaintiff could earn more than the salary that she earned throughout the marriage without *additional education and training*. In light of the court's emphasis on "equal . . . education level" as opposed to actual historical earnings, we cannot conclude that it was reasonable for the court to decide as it did based on the facts found or the evidence presented.

We also note that, even with the pendente lite alimony that she was receiving at the time the plaintiff filed her financial affidavit with the court on October 28, 2008, there was evidence that the plaintiff was not able to meet her obligations, which included the payments on

---

[8] Compare *Rozsa* v. *Rozsa*, 117 Conn. App. 1, 7–8, 17, 977 A.2d 722 (2009) (both parties earned master's degrees but had vastly different earning capacities based on their respective employment histories).

the debt.[9] It is reasonably foreseeable that, if the court's financial orders are allowed to stand and the plaintiff continues to be responsible for the entire debt but is unable either to increase her earning capacity or to receive alimony or a portion of the marital property, she could well be in dire financial straits. See *Deteves* v. *Deteves*, supra, 2 Conn. App. 593 (for state to assume burden of plaintiff's support would be at odds with very concept of alimony). "[W]hen invoking principles of equity, a court must examine both the public policy implicated and the basic elements of fairness." *Greco* v. *Greco*, supra, 275 Conn. 363 ("Under the trial court's order, the defendant was forced to the brink of abject poverty by his obligations to pay the required alimony and insurance premiums, and then stripped of any means with which to pay them by the disproportionate division of the marital assets. Such an order constitutes an abuse of discretion in light of the defendant's age, poor health and compromised ability to work."). Based on the instructive language of *Greco*, we are persuaded that the goal of fairness is not served by the outright refusal to order alimony under the facts of this case. Accordingly, under the circumstances present here, viewed in light of the remaining financial orders, we conclude that the trial court abused its discretion by failing to award time limited or rehabilitative alimony to the plaintiff.

The plaintiff next claims that the property division was inequitable because she not only received no portion of the parties' assets but also bore the responsibility

[9] Specifically, the plaintiff attested that she was making debt payments of $70 a week, $51 of which went to the Chase consolidation loan; see footnote 5 of this opinion; and the rest to her student loans and other personal debts. She did not attest to a weekly payment on the $37,000 debt to her mother. Her weekly expenses excluding the debt totaled $801. Her net weekly wage was $323. She was receiving $236 per week in pendente lite child support and $220 per week (reduced by $33 a week for federal income taxes) in pendente lite alimony. In sum, her weekly net income at the time of trial was $746 and her weekly expenses were $871, which did not include payments on the $37,000.

for the bulk of the marital debt. We note that "when an appellate court reverses a trial court judgment based on an improper alimony, property distribution, or child support award, the appellate court's remand typically authorizes the trial court to reconsider all of the financial orders." (Internal quotation marks omitted.) *Morris* v. *Morris*, 262 Conn. 299, 307, 811 A.2d 1283 (2003). Accordingly, we need not decide the plaintiff's claim concerning property distribution because we have determined that the court's order denying any alimony award was an abuse of discretion. See *Pellow* v. *Pellow*, supra, 113 Conn. App. 129–30 (declining to review claims concerning child support because court had already determined alimony award and property division were excessive).

The judgment is reversed only with respect to all financial orders, including the distribution of marital property, and the case is remanded for further proceedings according to law. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.