******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DONALD GEORGE CARTEN, JR. *v.* JUDY
JUNYING CARTEN
(AC 41858)

Elgo, Suarez and DiPentima, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court
dissolving her marriage to the plaintiff. The defendant claimed that the
trial court erred in declining to award her alimony. *Held* that the trial
court properly exercised its broad discretion in declining to make an
award of alimony to the defendant: the court considered the statutory
(§ 46b-82) factors in determining whether alimony should be awarded,
assessed the credibility of the parties' trial testimony, finding certain
testimony of the defendant to be not credible, and, based on the evidence
presented, found that the parties were able to continue the standard of
living to which they were accustomed during the marriage, considering
the defendant's average gross income, education and employability, as
well as the division of marital property, and the defendant did not
challenge any of the factual findings that supported the court's decision
not to award alimony.

Argued January 13—officially released March 30, 2021

*Procedural History*

Action for the dissolution of a marriage, and for other
relief, brought to the Superior Court in the judicial dis-
trict of New Haven and tried to the court, *Tindill, J.*;
judgment dissolving the marriage, from which the
defendant appealed to this court; thereafter, the court,
*Tindill, J.*, denied the defendant's motion for articula-
tion; subsequently, this court granted the defendant's
motion for review, and the court, *Tindill, J.*, issued an
articulation. *Affirmed*.

*Jeffrey D. Ginzberg*, for the appellant (defendant).

*Maria F. McKeon*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, J. The defendant, Judy Junying Carten, appeals from the judgment of the trial court dissolving her marriage to the plaintiff, Donald George Carten, Jr. The plaintiff claims on appeal that the court should have awarded her alimony. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The parties were married on June 27, 1999, in Orange and had two minor children at the time of the dissolution. In February, 2017, the plaintiff commenced this dissolution action. The court dissolved the marriage on June 26, 2018, finding that it had broken down irretrievably, and that the defendant "[was] more at fault for the irretrievable breakdown of the marriage than the plaintiff." The court did not award alimony to either party and divided the marital property between the parties. Additionally, the court found the following: "[T]he defendant wilfully violated the automatic orders . . . and the May 15, 2017 court orders . . . The plaintiff's pendente lite motion for contempt . . . is granted. The defendant shall pay the reasonable attorney's fees and costs associated with the preparation and prosecution of the motion for contempt." This appeal followed.

During the pendency of this appeal, the defendant filed a motion for articulation regarding the court's decision to make no award of alimony. The trial court denied the motion, and the defendant filed a motion for review with this court. This court granted the defendant's motion and ordered the trial court to "articulate what the parties' earnings and/or earning capacities were at the time of judgment, as well as the factual and legal basis for its determination that neither party would be awarded alimony with reference to the factors set forth in General Statutes [§] 46b-82 (a)." The trial court responded to this order, stating: "At the time of judgment, the court determined that the [plaintiff] had an annual gross earning capacity of $350,000 . . . and a current income of $41,184 . . . . His sole source of income at the time of judgment was severance and unemployment compensation. At the time of judgment, the court determined that the [defendant] had an annual gross income of $150,000. . . . In order to determine its alimony order, the court considered the factors enumerated in § 46b-82, assessed the credibility of the parties' testimony at trial, reviewed and considered the proposed orders . . . and the parties' written closing argument . . . and reviewed the evidence before it.

"Based on this review . . . the court determined . . . that it was within the court's discretion to decline to award alimony to either party; that an award of alimony, given the conduct of the defendant . . . would be unfair and inequitable; that based on the credible evidence before the court, the parties are able to con-

tinue to enjoy the standard of living to which they were accustomed during the marriage; that during the parties' eighteen year marriage, they were gainfully employed, made good financial decisions and investments, accumulated substantial savings, planned well for their respective retirements, and planned well for the financing of the children's postsecondary educational pursuits; that the [defendant] was at fault for the breakdown of the marriage . . . that the parties were in good health at the time of the trial; that both parties are well educated with significant employment experience, work history, and employability . . . that the [defendant] came to the marriage with approximately $20,000 more than the [plaintiff] [and that] [t]he parties grew their estate together during the marriage with steady employment, ample income, and financial acumen . . . in spite of the [defendant's] spending and hoarding habits and lack of accountability for moneys spent once the [plaintiff] filed for divorce; and that the division of property . . . and other assets, as well as the agreed upon parenting plan . . . did not warrant an award of alimony to either party."

The standard of review in domestic relations cases is well established. "[T]his court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . ." (Citations omitted; internal quotation marks omitted.) *Borkowski* v. *Borkowski*, 228 Conn. 729, 739, 638 A.2d 1060 (1994). "Appellate review of a factual finding, therefore, is limited both as a practical matter and as a matter of the fundamental difference between the role of the trial court and an appellate court. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Anderson* v. *Anderson*, 160 Conn. App. 341, 344, 125 A.3d 606 (2015). "In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Merk-Gould* v. *Gould*, 184 Conn. App. 512, 516, 195 A.3d 458 (2018).

According to the defendant, "[t]his is a case in which the trial court should have at least awarded nominal alimony." In support of her claim, the defendant asserts that "the court focused on the defendant's alleged bad behavior . . . gave scant attention to the issue of alimony and why it decided not to award even nominal alimony in a long-term marriage involving middle-aged people . . . [and] gave no attention to the defendant's

sublimating herself for the plaintiff's financial better-
ment during the marriage and the plaintiff's superior
earning capacity."[1] (Footnote omitted.) The plaintiff
argues in response that the court properly applied the
statutory provisions and considered the evidence
before it. We agree with the plaintiff.

As the court stated in its articulation, it considered
"the factors enumerated in § 46b-82, assessed the credi-
bility of the parties' testimony at trial . . . and
reviewed the evidence before it" in determining that
no award of alimony should be made. Section 46b-82
(a) provides in relevant part: "In determining whether
alimony shall be awarded . . . the court shall consider
the evidence presented by each party and shall consider
the length of the marriage, the causes for the . . . dis-
solution of the marriage . . . the age, health, station,
occupation, amount and sources of income, earning
capacity, vocational skills, education, employability,
estate and needs of each of the parties and the award,
if any, which the court may make pursuant to section
46b-81, and, in the case of a parent to whom the custody
of minor children has been awarded, the desirability
and feasibility of such parent's securing employment."

In its memorandum of decision, the court made the
following findings: "The [defendant] is more at fault for
the irretrievable breakdown of the marriage than the
[plaintiff]. . . . Based on the credible evidence before
the court and considering the factors required by § 46b-
82, an award of alimony for either party is unwarranted.
. . . The defendant's testimony regarding the $20,000
received by the parties from her mother, the source of
the shoebox money ($13,380), the rental of the . . .
beach houses . . . and income from those beach
houses is not credible."[2] In its articulation, the court
also found that "the parties are able to continue to enjoy
the standard of living to which they were accustomed
during the marriage . . . the [defendant] was at fault
for the breakdown of the marriage . . . the parties
were in good health at the time of the trial; that both
parties are well-educated with significant employment
experience, work history, and employability . . . [t]he
parties grew their estate together during the marriage
with steady employment, ample income, and financial
acumen . . . in spite of the [defendant's] spending and
hoarding habits and lack of accountability for moneys
spent once the [plaintiff] filed for divorce; and [because
of] the division of property . . . and other assets, as
well as the agreed upon parenting plan," no award of
alimony was warranted. The defendant challenges none
of the factual findings that supported the court's deci-
sion not to award alimony. Further, § 46b-82 (a) pro-
vides in relevant part that, "[i]n determining whether
alimony shall be awarded . . . the court shall consider
the evidence presented by each party" and also directs
the court to consider the statutory factors; this is what
the court did. Accordingly, the court did not abuse its

discretion by declining to award alimony to the defendant based on its consideration of the evidence and factors set forth in § 46b-82 (a).

Furthermore, the cases cited by the defendant are clearly distinguishable from the present case. In *Casey* v. *Casey*, 82 Conn. App. 378, 844 A.2d 250 (2004), the opening sentence of this court's opinion sets the stage as to why it does not support the defendant's position: "This case represents one of the *very rare* matrimonial cases in which a disappointed party successfully argues that the financial orders entered incident to a dissolution action exceed the broad discretion of the trial court." (Emphasis added.) Id., 379. In *Casey*, the parties were married in June, 1996, and the plaintiff husband filed a dissolution action in May, 2001. Id., 380–81. At the time of the dissolution, the plaintiff was fifty-two years old and the defendant was fifty-four years old. Id., 381. The trial court found that, "[a]s to the breakdown of the marriage . . . although both parties' conduct ultimately caused the breakdown, the plaintiff's sexual infidelities initiated the breakdown and were the primary cause of the failure of the marriage." Id., 381–82. The court made no award of alimony but did distribute the principal assets of the parties. Id., 382. In reviewing the order of the trial court, this court held that "the financial orders were logically inconsistent with the facts found and that the court could not reasonably have concluded as it did." Id., 385. Specifically, this court held: "Applying those factual findings to the statutory considerations set forth in General Statutes §§ 46b-81 and 46b-82, we cannot reconcile the court's financial orders with its findings. . . . That is particularly true when, as here, the evidence revealed that the defendant would be unable to make the monthly [mortgage] payments and, therefore, faced the daunting prospect of defaulting on the mortgage or selling the property in the near future." Id.

These facts are clearly distinguishable from the present case, where the trial court found, and the record shows, that "the parties are able to continue the standard of living to which they were accustomed during the marriage," and the defendant has raised no issue with the manner in which the court distributed marital property. Accordingly, we conclude that, unlike *Casey*, the present case is not one of the "very rare cases" in which the court has abused its discretion.

In *Wiegand* v. *Wiegand*, 129 Conn. App. 526, 539, 21 A.3d 489 (2011), this court concluded that the trial court abused its discretion by failing to make an award of alimony to the plaintiff husband because "the plaintiff had little or no income, while the defendant had a net income of approximately $889 weekly. The plaintiff was ordered to assume and to pay a substantial portion of the marital debt, despite having little or no income to pay that debt, and the court did not make any findings

regarding his prospects for employment or his earning capacity. Because the parties did not have substantial personal assets, it reasonably is foreseeable that if the plaintiff complied with the court's orders, he quickly would become destitute, to the extent that he was not already destitute." Thus, *Wiegand* is clearly distinguishable from the present case, in which the court found, and the record shows, that the defendant, at the time of dissolution, "had an annual gross income of $150,000" and was "well educated with significant employment experience, work history, and employability" and that "[t]he parties grew their estate together during the marriage with steady employment, ample income, and financial acumen." The court in the present case also took into account "the division of property . . . and other assets" in concluding that an award of alimony was not warranted.

In *Kovalsick* v. *Kovalsick*, 125 Conn. App. 265, 7 A.3d 924 (2010), this court held the following in concluding that it was unreasonable for the trial court to decide to make no award of alimony to the plaintiff wife: "The court found that the parties had 'equal standing in their educational level' and that the plaintiff had 'additional skills' in the job market because she is bilingual. In declining to award time limited alimony, the court found that the plaintiff is 'in good health, that she has obtained a four year bachelor of arts degree and has bilingual skills with a good work history . . . .' Despite the evidence of actual earnings, the court appeared to equate the parties' 'equal standing in their education level' to equal earning capacity. The court, however, found that the plaintiff earned only $13 to $15 per hour throughout the marriage and that she was working 37.5 hours per week at only $13 per hour at the time of trial. The plaintiff's earnings from her employment never exceeded $25,000 per year while the defendant historically earned roughly five times that amount. No evidence was presented that would tend to show that the plaintiff could earn more than the salary that she earned throughout the marriage without additional education and training. In light of the court's emphasis on 'equal . . . education level' as opposed to actual historical earnings, we cannot conclude that it was reasonable for the court to decide as it did based on the facts found or the evidence presented." (Emphasis omitted; footnote omitted.) Id., 274. This court further held that "there was evidence that the plaintiff was not able to meet her obligations, which included the payments on the debt . . . [and that] [i]t is reasonably foreseeable that, if the court's financial orders are allowed to stand and the plaintiff continues to be responsible for the entire debt but is unable either to increase her earning capacity or to receive alimony or a portion of the marital property, she could well be in dire financial straits." (Footnote omitted.) Id., 274–75.

The facts in *Kovalsick*, like the facts in *Wiegand*, are

clearly distinguishable from those in the present case. As in *Wiegand*, this court, in addressing the plaintiff's claim in *Kovalsick*, focused on the income of the plaintiff and her level of debt. The defendant in the present case is in a situation significantly distinct from that of the plaintiff in *Kovalsick*; nothing in this case suggests that, without alimony, the defendant could find herself in "dire financial straits," or be unable to meet her obligations. In fact, the court in the present case found, and the record indicates, that "the [defendant] had an annual gross income of $150,000 . . . [and that] the parties are able to continue to enjoy the standard of living to which they were accustomed during the marriage." Accordingly, *Kovalsick* does not support the defendant's position.

We conclude by noting that while there may be a common thread that runs through these cases—a potential inability of a party to meet its expenses and debt obligations after dissolution—they do not create, as the defendant suggests, a hard and fast rule that requires a trial court to make an award of alimony in specific factual circumstances. Because the record in the present case supports the court's conclusion that no award of alimony was warranted, we find that the court was within its broad discretion in declining to make such an award.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] To the extent the defendant argues that the court improperly failed to consider her future needs in declining to award her alimony, we are not persuaded. In its articulation, the court stated that it "considered the factors enumerated in § 46b-82." Hence, "[a]ny ambiguity as to the criteria upon which the court relied for alimony was put to rest in [the] articulation . . . wherein the trial court indicated that it had relied upon the criteria in § 46b-82 . . . ." *Maguire* v. *Maguire*, 222 Conn. 32, 47, 608 A.2d 79 (1992).

[2] The court also found that "[t]he defendant . . . has intentionally caused delay, failed to comply with court orders, failed to appear in court, reneged on agreements, fired or sabotaged attorneys representing her, and has taken other action to avoid orderly, efficient proceedings because she does not want to be divorced from the plaintiff." Although these findings may support the court's findings of contempt and award of attorney's fees, a trial court should resist including findings related to misconduct during court proceedings with those findings properly made pursuant to § 46b-82 (a).