ALISE PELLOW *v.* STEVEN PELLOW
(AC 28904)

Harper, Beach and Pellegrino, Js.

Argued October 14, 2008—officially released March 10, 2009

*Thomas C. C. Sargent*, for the appellant (defendant).

*Donald F. Reid*, for the appellee (plaintiff).

*Opinion*

HARPER, J. The defendant, Steven Pellow, appeals from the judgment rendered by the trial court dissolving his marriage to the plaintiff, Alise Pellow. On appeal, the defendant claims that the court improperly (1) made a factual finding concerning the plaintiff's disability, (2) made financial orders under General Statutes §§ 46b-81 and 46b-82 that were excessive, (3) awarded child support and (4) ordered a property division of the marital home. We affirm in part and reverse in part the judgment of the trial court.

The parties were married on May 18, 2000. The court filed a memorandum of decision on May 30, 2007, and dissolved the parties' marriage. At the time of dissolution, the parties had no children born of the marriage. Nonetheless, the plaintiff became the legal guardian of the defendant's daughter from a previous marriage. The defendant's daughter was seventeen years of age at the time of the dissolution. The court found that the marriage had broken down irretrievably as a result of the defendant's extramarital relationship in China and, without an express finding as to the parties' earning capacity or income, entered various financial orders. In relevant part, it ordered the defendant to pay to the plaintiff $175 per week in child support for the defendant's biological daughter until she reached nineteen years of age and $4500 per month in periodic alimony for ten years. The defendant also was ordered to convey the marital home, which was undergoing foreclosure proceedings, to the plaintiff. This appeal followed.

After the defendant timely filed two separate motions for articulation, the court articulated in response to the first motion that the foreclosure proceeds of the marital home were awarded to the plaintiff because she and the defendant's three children from a previous marriage resided in the marital home. It also stated that "[t]he award of the marital home was not based on the gross or net income of either party." In response to the second motion for articulation, the court further articulated that the defendant's gross income was $78,976 and his net income was $52,104. It also stated that it considered the needs of the defendant's seventeen year old daughter in entering its child support order and the fact that the plaintiff is disabled. Additional facts will be set forth as necessary.

At the outset, "[t]he standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases

unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Elia* v. *Elia*, 99 Conn. App. 829, 831, 916 A.2d 845 (2007).

I

The defendant claims that the court improperly based its financial orders on a finding that the plaintiff was "seriously disabled" and unable "to perform meaningful employment" because her disability was either unsupported by any medical evidence or contrary to other evidence produced at trial. We are unpersuaded.

Our standard of review concerning a trial court's findings of fact is well established. "If the factual basis of the court's decision is challenged, our review includes determining whether the facts set out in the memorandum of decision are supported by the record or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . Further, a court's inference of fact is not reversible

unless the inference was arrived at unreasonably. . . . We note as well that [t]riers of fact must often rely on circumstantial evidence and draw inferences from it. . . . Proof of a material fact by inference need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. . . . Moreover, it is the exclusive province of the trier of fact to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony. . . . Thus, if the court's dispositive finding . . . was not clearly erroneous, then the judgment must be affirmed." (Citations omitted; internal quotation marks omitted.) *Levy, Miller, Maretz, LLC* v. *Vuoso*, 70 Conn. App. 124, 130–31, 797 A.2d 574 (2002).

Despite the lack of an express finding in the court's memorandum of decision on the plaintiff's disability, the court articulated that the plaintiff was seriously disabled and unable to perform meaningful employment. In the memorandum of decision, the court found that the defendant was aware of most of the plaintiff's serious medical and physical problems at the time of the marriage. The plaintiff testified at trial about her experience with the various health issues she faced prior to and during the marriage and how the various health issues affected her life and ability to work.[1] The

---

[1] The testimony reflects that when the plaintiff met the defendant, she had her first spinal cord surgery, which left her with trauma induced fibromyalgia that resulted in symptoms of fatigue. It further reflects that after the marriage, as the parties prepared to move into a new home, the disks in the plaintiff's spine that were above her fusion fractured and collapsed, which led to a second extensive spinal surgery. The plaintiff was left with permanent esophageal damage after her esophagus collapsed during surgery. The testimony reflects that although the plaintiff's physical condition improved, she was left with limited mobility, numbness and some neurological problems. Later, the plaintiff's health deteriorated after she received a flu shot that left her with a neurological disorder, which requires treatment every other week. The testimony further reflects that the disorder requires

record reveals that the defendant, by his volition, did not cross-examine the plaintiff about her alleged health issues. Rather, the defendant waited until his closing remarks at trial to address the plaintiff's health allegations.[2]

The defendant argues that in addition to the plaintiff's failure to offer proof, other than her testimony, of a disabling medical condition, the plaintiff contradicted her testimony with statements concerning her role as a domestic partner, parent and homemaker. Specifically, to support his argument, the defendant refers to the plaintiff's testimony that reflected her ability to take care of the children, to cook meals for the family and to be actively mobile for family activities and her declaration to the court that by 2003 she had recovered from her injuries and was feeling "fabulous."

Nonetheless, on the basis of that conflicting testimony,[3] the court, as the trier of fact, reasonably could have found that despite the plaintiff's feeling better in spring, 2003, she became ill again in October, 2003,

that the plaintiff receive bed rest and, without treatment, causes her to be in a wheelchair.

[2] The defendant began his closing remarks in relevant part as follows: "It seems to me that the crux of the plaintiff's case is this health issue and the ability of the plaintiff to work. Your Honor, this plaintiff has come to this court every single time we've had a court hearing on her own steam. She does not appear to be disabled. She has actually applied for jobs during the course of the marriage. . . . The burden is on her to show that she's disabled and unable to work, and she simply hasn't shown that, Your Honor. . . . I say she is able to work. She's got drive and physical capacity. She shows absolutely no sign of being disabled, and she hasn't offered the evidence to this court on which the court could conclude that she's unable to work."

[3] "The credibility of a witness is a matter for the [trier of fact] and, except in rare instances, there is no requirement that a witness's testimony be corroborated by other evidence. . . . The absence of corroboration, of course, may affect the trier's decision as to the sufficiency of the evidence and the burden of proof . . . but this factor goes to the weight of the claimant's case rather than to his or her ability to bring the case before the trier." (Citations omitted; internal quotation marks omitted.) *Carrano* v. *Yale-New Haven Hospital*, 279 Conn. 622, 647, 904 A.2d 149 (2006).

by contracting Guillain-Barre[4] syndrome after she was given a flu vaccine. In addition, it would not have been unreasonable for the court to have found the plaintiff's testimony credible, such that she delayed receiving treatment for her condition, until spring, 2004, so that she could care for the defendant while he had pneumonia. In light of the testimony and evidence presented at trial, we conclude that there was sufficient evidence before the court for it to make a factual finding that the plaintiff was disabled and unable to work.

## II

Next, the defendant claims that the court abused its discretion by making excessive financial orders under §§ 46b-81 and 46b-82. Specifically, the defendant argues that the court's financial orders would leave him destitute and with no means to support himself. We agree.

In dissolution proceedings, the court must fashion its financial orders in accordance with the criteria set forth in § 46b-81 (division of marital property) and § 46b-82 (alimony). Both provisions require consideration of the parties' "amount and sources of income" in determining the appropriate division of property and alimony.[5] On the basis of the court's memorandum of

---

[4] See Webster's Third New International Dictionary (defining Guillain-Barre syndrome as "a neurologic disorder of unknown cause characterized by sensory disturbances in the extremities and slight to severe locomotor impairment").

[5] General Statutes § 46b-81 (c) provides in relevant part that trial courts shall consider various factors when allocating marital property among the parties, including "the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, *amount and sources of income*, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. . . ." (Emphasis added.)

General Statutes § 46b-82 (a) provides in relevant part that trial courts should determine the appropriate amount of alimony on the basis of "the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, *amount and sources of income*, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ." (Emphasis added.)

decision and its articulation in this case, it is clear that the court considered the defendant's gross income to be $78,976 when it fashioned the alimony award.[6] The court's financial orders totaled more than $70,000 annually, which consumes more than 90 percent of the defendant's income as determined by the court. Therefore, we agree that the financial orders at issue were excessive.[7] "Requiring that the defendant pay alimony that consumes his income and distributing the marital property in this manner offends the long settled principle that the defendant's ability to pay is a material consideration in formulating financial awards." *Greco* v. *Greco*, 275 Conn. 348, 361, 880 A.2d 872 (2005).

"Because the financial orders in an action for dissolution of marriage are of necessity interwoven and because the rendering of a judgment in an action for the dissolution of marriage is a carefully crafted mosaic"; (internal quotation marks omitted) *Watrous* v. *Watrous*, 108 Conn. App. 813, 819, 949 A.2d 557 (2008); each element of which may be dependent on the other, the third and fourth claims are necessarily affected by the court's abuse of discretion in rendering judgment under §§ 46b-81 and 46b-82 in excess of the defendant's income and without a finding as to the parties' earning capacity. See *Morris* v. *Morris*, 262 Conn. 299, 307, 811

[6] The plaintiff argues that the financial orders are not excessive in light of the defendant's earning capacity, which she argues is approximately $300,000. Because the court did not make a finding as to the earning capacity of either party, we will not speculate on any supposed intention by the court not expressed in the memorandum of decision or articulations of that decision.

[7] At oral argument, the defendant stated that the court modified the alimony award to approximately $1000 per month, as of February, 2008, after the appeal was filed. Regardless of the reduction in the monthly alimony award, this opinion relates to the financial orders as entered at the time of the marriage dissolution. Accordingly, a finding that the court abused its discretion in the alimony award provides the defendant practical relief by requiring the plaintiff to reimburse him for any overpayments of alimony. See *Weinstein* v. *Weinstein*, 280 Conn. 764, 769 n.5, 911 A.2d 1077 (2007).

A.2d 1283 (2003) ("when an appellate court reverses a trial court judgment based on an improper alimony, property distribution, or child support award, the appellate court's remand typically authorizes the trial court to reconsider all of the financial orders" [internal quotation marks omitted]). Accordingly, we need not discuss the plaintiff's third claim concerning child support because we have concluded that the court's financial orders were excessive.[8] As to the defendant's fourth claim concerning the distribution of the marital property on either illogical grounds or illegal factors, we conclude that the issue is moot[9] in light of our conclusion that the court's property division and financial orders were excessive.

The judgment is reversed with respect to all financial orders, including the distribution of marital property, and the case is remanded for further proceedings on those issues. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[8] In addition, the plaintiff argues that the defendant's third claim on whether the court improperly awarded child support is moot because the child is no longer a minor. We disagree. Although the child is no longer a minor, a finding that the court abused its discretion in the support order provides the defendant practical relief by requiring the plaintiff to reimburse him for any overpayments of child support. See *Weinstein* v. *Weinstein*, 280 Conn. 764, 769 n.5, 911 A.2d 1077 (2007).

[9] See also *Wilcox* v. *Ferraina*, 100 Conn. App. 541, 547–48, 920 A.2d 316 (2007) ("Mootness is a threshold issue that implicates subject matter jurisdiction, which imposes a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties. . . . Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . [T]he existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." [Internal quotation marks omitted.]).