## CRAIG E. TUCKMAN *v.* KAREN R. TUCKMAN
(AC 30913)

Gruendel, Harper and Mihalakos, Js.

---

Argued October 19, 2010—officially released March 22, 2011

*Charles W. Fleischmann,* for the appellant (defendant).

*Daniel Jonah Krisch,* with whom was *Kenneth J. Bartschi,* for the appellee (plaintiff).

*Opinion*

MIHALAKOS, J. In this marital dissolution action, the defendant, Karen R. Tuckman, appeals from the judgment of the trial court with respect to the court's financial orders. Specifically, the defendant claims that the court abused its discretion by improperly (1) failing

to award her alimony, (2) awarding her an insufficient amount of child support and (3) determining that the investment assets held by the Karen Blueweiss Trust were part of the marital estate. Because we agree with the defendant as to her second claim, we reverse the judgment of the trial court.

The record discloses the following relevant information. The defendant and the plaintiff, Craig E. Tuckman, were married on November 3, 1990. They have two children, a son, born in 1994, and a daughter, born in 1996. Both parties have substantial income and assets available to them. In 2005 and 2006, the defendant had an income of $530,000 and $945,000, respectively. The defendant's assets included a one-third stake in BJK Partners (BJK), an investment partnership with her two older brothers, and a one-third ownership interest in Offices Limited, Inc., a family office furniture business. According to the parties' financial affidavits, at the time of trial, the defendant's share of BJK was valued at approximately $2.7 million, while her share of Offices Limited, Inc., was valued at $1.25 million. The defendant also earned well over $2 million through her BJK investment partnership between 1996 and 2007. In 2006 and 2007, the plaintiff, who worked in the commodities division at Merrill Lynch, each year earned a base compensation of $200,000 with a bonus of $1.5 million. In 2008, the plaintiff was set to begin employment at Citicorp, where he was to receive base pay along with a bonus of $1.25 million in 2009 and 2010.

On September 13, 2006, the plaintiff brought this dissolution action by complaint in which he sought a dissolution of the marriage and an appropriate order regarding custody, child support and educational support of their minor children. Thereafter, the defendant filed an answer and cross complaint in which she sought a dissolution of the marriage, alimony, joint custody of the minor children, child support, educational support,

an assignment of the plaintiff's estate, an order directing the plaintiff to provide security in satisfaction of any judgment rendered and attorney's fees.

Following a trial, on January 8, 2009, the court, *Hon. Howard T. Owens, Jr.,* judge trial referee, issued its memorandum of decision, dissolving the parties' marriage, adopting the parties' agreed parenting plan and setting forth its financial orders. The court found, as it related to fault, that "neither party is to blame—it is just a marriage that despite the parties' efforts, it did not succeed." In so finding, the court issued the following financial orders: (1) no periodic alimony to either party; (2) $250 per week in support of each child to the defendant; (3) property of the parties to be divided with 67 percent going to the defendant and 33 percent to the plaintiff, with the exception of the Neuberger-Berman account, which went to the defendant; (4) possession of the marital home to the defendant and half of its equity, or $528,183, to be paid to the plaintiff within sixty days; (5) denial of the defendant's request for attorney's fees; and (6) additional orders relating to personal property and medical insurance and expenses.

The plaintiff and the defendant filed numerous motions for articulation and to reargue. In response, the court rectified its judgment and clarified several statements in its memorandum of decision. The court denied the defendant's requests to reconsider its decisions on alimony, asset division and attorney's fees. This appeal followed. Additional facts will be set forth as necessary.

"[T]he standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court

to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Pellow* v. *Pellow*, 113 Conn. App. 122, 124–25, 964 A.2d 1252 (2009).

We first address the defendant's second claim, which is that the court improperly awarded only $250 per child per week to the defendant in child support. We agree with the defendant and reverse the judgment of the trial court.

In its memorandum of decision, the court ordered that "[a]s a contribution toward expenses related to the children when they are with [the defendant], the [plaintiff] shall pay child support to [her] in the amount of $250 per week for each child." Therefore, the court's total support order for the two children was $500 per week.

In *Maturo* v. *Maturo*, 296 Conn. 80, 89–91, 995 A.2d 1 (2010), our Supreme Court discussed the statutes and regulations enacted by our legislature that govern child support. "[General Statutes §] 46b-84 provides in relevant part: (a) Upon or subsequent to the annulment or dissolution of any marriage or the entry of a decree of legal separation or divorce, the parents of a minor child

of the marriage, shall maintain the child according to their respective abilities, if the child is in need of maintenance. Any postjudgment procedure afforded by chapter 906 shall be available to secure the present and future financial interests of a party in connection with a final order for the periodic payment of child support. . . .

"(d) In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child. . . ."[1]

"The legislature also has provided for a commission to oversee the establishment of child support guidelines, which must be updated every four years, to ensure the appropriateness of child support awards . . . . General Statutes § 46b-215a. . . . Moreover, the legislature has thrown its full support behind the guidelines, expressly declaring that [t]he . . . guidelines established pursuant to section 46b-215a and in effect on the date of the support determination *shall be considered in all determinations of child support amounts* . . . . In all such determinations, there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount of support . . . . A specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case, as determined under criteria established by the [commission] under section 46b-215a, shall be required in order

---

[1] In its memorandum of decision, the court referenced § 46b-84 only as it related to health insurance and medical expenses.

to rebut the presumption in such case. (Citation omitted; emphasis in original; internal quotation marks omitted.) General Statutes § 46b-215b (a)." *Maturo* v. *Maturo*, supra, 296 Conn. 89–91.

Section 46b-215a-1 (6) of the Regulations of Connecticut State Agencies defines a "[c]hild support award" as "the entire payment obligation of the noncustodial parent, as determined under the . . . guidelines . . . ." The guidelines specifically provide that "[w]hen the parents' combined net weekly income exceeds $4,000, child support awards shall be determined on a case-by-case basis, and the current support prescribed at the $4,000 net weekly income level shall be the minimum presumptive amount." Regs., Conn. State Agencies § 46b-215a-2b (a) (2). Pursuant to the guidelines, for families with a combined net income of $4000 per week, the basic child support obligation for two children is $636. Id., § 46b-215a-2b (f).

In *Maturo*, the court addressed the fashioning of a child support award when the parents' combined net weekly income exceeds $4000. "[A]n award of child support based on a combined net weekly income of $8000 must be governed by the same *principles* that govern a child support award based on a combined net weekly income of $4000, even though the former does not fall within the guidelines' *schedule*. . . . [A]lthough courts may, in the exercise of their discretion, determine the correct percentage of the combined net weekly income assigned to child support in light of the circumstances in each particular case, including a consideration of other, additional obligations imposed on the noncustodial parent, any deviation from the schedule or the principles on which the guidelines are based must be accompanied by the court's explanation as to why the guidelines are inequitable or inappropriate and why the deviation is necessary to meet the needs of

the child." (Emphasis in original.) *Maturo* v. *Maturo*, supra, 296 Conn. 95–96.

Based on the relevant statutes, regulations and case law, it is clear that, in this case, the court deviated from the principles that govern child support awards pursuant to the guidelines.[2] At trial, the court heard evidence that both parties earn significant incomes. According to the plaintiff's testimony, his base salary in 2006 was $200,000 with a bonus of $1.5 million ($1.125 million in cash), with an expected similar salary and bonus structure from 2007 to 2010 while employed at Merrill Lynch and Citicorp. Although the plaintiff's income clearly places this case outside the child support guidelines table, that does not absolve the court from its duty to make factual findings related to the guidelines simply because the "income of a particular family exceeds some talismanic number on a chart." Id., 113.

"Neither this court, nor the trial court, is at liberty, where a particular family enjoys a relatively high income, to disregard the significant progress that has

[2] The parties dispute whether the defendant, as is required, submitted a child support guidelines sheet. In some instances, such a failure is fatal to an appellant's claim that the court fashioned an improper child support order. See *Bee* v. *Bee*, 79 Conn. App. 783, 787, 831 A.2d 833, cert. denied, 266 Conn. 932, 837 A.2d 805 (2003). Although no guidelines sheet can be found in the record, the following colloquy between trial counsel for the plaintiff and the defendant allows us to conclude that the defendant submitted a guidelines sheet:

"[The Defendant's Counsel]: Okay. Your Honor, the defendant did submit a child support guideline worksheet at the beginning of trial. [The plaintiff's counsel] questioned, he couldn't recall whether anyone submitted any. We did submit a child support guideline worksheet, which is mandated by the rules of practice, if you want the court to be responsible for that information. . . .

"[The Plaintiff's Counsel]: . . . [I]f the defendant's attorney tells Your Honor that he submitted it, I don't question that. But, you know, this isn't or wasn't a guidelines case, and there would be a basis for deviation because of the substantial assets that you awarded to [the defendant], in any event. But, again, if all [the defendant's counsel] is looking [for] is for you to reference that you considered his worksheet, I don't have an issue with that."

been made in standardizing child support awards since the advent of the guidelines. See 42 U.S.C. § 667 (b) (2) (1988). Removing consideration of the guidelines from child support decisions deprives high income families of the fairness and consistency the guidelines require and leaves the trial and appellate courts adrift, unanchored to the core principles that guide support awards in cases falling within the guidelines' schedule." *Maturo* v. *Maturo*, supra, 296 Conn. 113. Based on the record before us and the court's memorandum of decision, we cannot conclude that the court properly fashioned its child support order. The court's order failed to follow the guidelines' tables, and, more importantly, its memorandum of decision failed to make any reference to the guidelines. Thus, we are left to speculate as to whether the court acknowledged the guidelines but deviated from them without making findings on the record as to how application of the guidelines would be inequitable or inappropriate, or, in the alternative, disregarded the guidelines entirely. In either case, the court violated the statutory provisions by failing to articulate its reasons for deviating from the child support guidelines. We, therefore, conclude that the court abused its discretion when it awarded $250 per child per week to the defendant.

We are, thus, left to determine what remedy to afford the plaintiff. "[W]hen an appellate court reverses a trial court judgment based on an improper alimony, property distribution, or child support award, the appellate court's remand typically authorizes the trial court to reconsider all of the financial orders." *Smith* v. *Smith*, 249 Conn. 265, 277, 752 A.2d 1023 (1999). "With respect to the financial orders predicated on those findings of fact, [the] issues involving financial orders are entirely interwoven. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other."

(Internal quotation marks omitted.) *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 378, 999 A.2d 721 (2010). Although the majority of appellate decisions involving improper financial orders in dissolution cases remand for reconsideration as to all financial orders, our Supreme Court has remanded for the sole purpose of refashioning a court's child support order. "[E]very improper order . . . does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors. . . . In other words, an order is severable if its impropriety does not place the correctness of the other orders in question." (Citation omitted; internal quotation marks omitted.) *Maturo* v. *Maturo*, supra, 296 Conn. 124–25.

In *Maturo*, the trial court made specific findings on the record as to why it deviated from the guidelines in fashioning its child support order. Id., 99–100. The trial court first awarded the plaintiff $636 per week, the amount designated in the schedule for two children with a combined net weekly family income of at least $4000 per week, but also awarded the plaintiff 20 percent of the defendant's annual net cash bonus, which varied from $489,449.50 to $1.368 million. Id., 96. Our Supreme Court determined that the trial court's child support award of 20 percent of the defendant's bonus, awarded on top of its award of the statutory guidelines amount, was both improper and severable from the remaining financial orders. Id., 124–25. The court did, however, remand as to the entire child support order. Id.

Similarly, in a recent case, *Kiniry* v. *Kiniry*, 299 Conn. 308, 325–26, 9 A.3d 708 (2010), our Supreme Court held that the trial court abused its discretion by failing to establish a presumptive child support amount prior to fashioning its child support orders. The Supreme

Court concluded that the trial court's child support orders were severable from the other financial orders entered by the court because "[t]here [was] no interdependence or link between the child support orders, which are based on the parties' net income, and the asset allocation." Id., 345. In that case, by way of an articulation, the trial court determined the net weekly incomes of both parties and explained its reasoning for deviating from the child support guidelines, referenced therein, in deciding not to award child support to the defendant. Id., 320.

In the present case, the court failed to make a finding as to the net income of the plaintiff or to refer to the child support guidelines, as is statutorily required. We are, thus, left with a trial court decision that is devoid of guidance as to how the court fashioned its child support order within the entire mosaic of its financial orders. Without such guidance, we cannot determine whether the court's financial awards would remain intact after reconsidering its child support award. Based on the ambiguous nature of the court's child support order as it relates to the guidelines, we cannot conclude that the child support order is severable from the remaining financial orders. Accordingly, a new trial on all financial issues is required.[3] See *Brooks* v. *Brooks*, 121 Conn. App. 659, 672, 997 A.2d 504 (2010).

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[3] Because we remand this case for a new trial as to all financial orders, we need not address the defendant's remaining claims.