******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KENECHUKWU ONYILOGWU *v.* CATHERINE
I. ONYILOGWU
(AC 44942)

Bright, C. J., and Elgo and Norcott, Js.

*Syllabus*

The plaintiff appealed to this court from the judgment of the trial court
dissolving his marriage to the defendant and making certain financial
orders. Following a trial, the court ordered the plaintiff to pay the
defendant a certain amount per month in alimony for ten years. In a
subsequent articulation, the court clarified that, in determining the
amount and sources of the plaintiff's income, it took into account funds
received by the plaintiff as temporary unemployment assistance due to
the COVID-19 pandemic. *Held* that the trial court abused its discretion
in making an excessive award of alimony and the case was remanded
for a new trial on all financial orders: the trial court improperly included
the plaintiff's temporary pandemic unemployment assistance benefits
in its calculation of his income because those benefits did not occur
with enough regularity due to their temporary nature and, thus, could
not form the basis for determining the amount of income available for
support purposes for the court's ten year alimony award; moreover,
when this court subtracted the plaintiff's temporary pandemic unemploy-
ment assistance benefits from the court's calculation of the plaintiff's
income, the alimony order would have consumed most of the plaintiff's
income, which was contrary to the long settled principle that the plain-
tiff's ability to pay is a material consideration in formulating financial
awards, and both common knowledge at the time of the court's 2021
decision, as well as common sense, indicated that the plaintiff would
stop receiving temporary pandemic unemployment assistance benefits
soon after the court's order of a ten year alimony award.

Argued October 17, 2022—officially released February 21, 2023

*Procedural History*

Action for the dissolution of a marriage, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Fairfield, where the case was tried to the court,
*Rodriguez, J.*; judgment dissolving the marriage and
granting certain other relief, from which the plaintiff
appealed to this court. *Reversed in part*; *further pro-
ceedings*.

*David V. DeRosa*, for the appellant (plaintiff).

*James H. Lee*, with whom, on the brief, was *Charleen
Merced Agosto*, for the appellee (defendant).

*Opinion*

NORCOTT, J. The plaintiff, Kenechukwu Onyilogwu, appeals from the trial court's judgment dissolving his marriage to the defendant, Catherine I. Onyilogwu. On appeal, the plaintiff challenges the court's financial orders and claims that the court abused its discretion in making an excessive award of alimony. We agree and, accordingly, reverse the judgment as to the financial orders.[1]

The following facts, as found by the trial court, and procedural history are relevant. The parties were married in Nigeria on October 4, 2010, and no children were born of the marriage. Both parties moved to the United States and were symbolically married in a religious ceremony in November, 2013. The plaintiff filed an action for dissolution of marriage in 2019. Following a trial on August 10, 2021, which was held remotely due to the COVID-19 pandemic, the court issued a memorandum of decision on August 27, 2021, in which it found that the marriage had broken down irretrievably without the possibility of reconciliation due to the plaintiff's adulterous behavior and mismanagement of household expenses. The court found that the defendant has a bachelor's degree in chemistry and a master's degree in business administration and has worked as a substitute teacher and as a caregiver companion. The court further found that the plaintiff is a banker and financial adviser who is self-employed and that, although he earned a negative net income between 2016 and 2018, his "finances have improved and . . . he is able to support himself and support the defendant . . . while she attends an institution of higher education." The court found, on the basis of defendant's exhibit I, which contains records of deposits and withdrawals from the plaintiff's savings and checking accounts, that the plaintiff "has been earning income ranging from $3000–$7000" per month. The court ordered that the plaintiff pay the defendant $1500 per month in alimony for ten years, commencing on September 20, 2021, or, alternatively, to make a lump sum payment to the defendant of $120,000 on or before November 26, 2021. This appeal followed.[2]

On September 15, 2021, during the pendency of the present appeal, the plaintiff filed a motion to reargue/reconsider in the trial court in which he requested that the court grant reconsideration due to, among other things, the temporary nature of the pandemic unemployment assistance he had been receiving and the fact that he stopped receiving benefits in early September, 2021. The court has not ruled on that motion.[3]

Following oral argument before this court, we ordered the trial court "to articulate its August 27, 2021 memorandum of decision concerning the 'amount and sources of income'; General Statutes § 46b-82; that it

used to calculate the plaintiff's income for the purposes of its alimony award, specifically addressing whether the plaintiff received temporary unemployment pandemic assistance and, if so, whether that assistance was included as a source of income in the court's calculations and in what amount." On December 19, 2022, the court clarified in its articulation that, "[i]n determining the amount and sources of income used to calculate the plaintiff's income for the purpose of the alimony award, the court took into account funds received by the plaintiff as temporary pandemic unemployment assistance in the total amount of approximately $16,085. This is assistance which was included as a source of income in awarding alimony to the defendant. (Defendant's Exhibit I)." On December 21, 2022, we permitted the parties to file supplemental memoranda in response to the court's articulation. Both parties submitted memoranda.

On appeal, the plaintiff argues that the court abused its discretion in ordering him to pay $1500 per month in alimony for ten years when that award "was so excessive it would leave the plaintiff destitute." He contends that the court improperly included his temporary pandemic unemployment assistance benefits in its calculation of his income. Highlighting exhibit I, on which the court relied in fashioning the alimony award, the plaintiff contends that, according to that exhibit, he "only made between $1500 to $3000 per month from his own efforts in his business," and that this amount was "artificially inflated" when he began receiving "temporary pandemic related unemployment payments of about $1400 a month . . . ." In his supplemental memorandum, the plaintiff contends that "[t]he articulation by the Superior Court removes any doubt that in establishing a [ten] year alimony order at $1500 a month, the Superior Court considered the pandemic unemployment assistance in determining the plaintiff's earning capacity. . . . Given that it was foreseeable at trial that the plaintiff would no longer have access to the temporary pandemic unemployment assistance, it was an error for the court . . . to rely on those funds in establishing a periodic alimony order of that magnitude or for a term that long as a regular periodic alimony order." (Citation omitted.)

The defendant counters in her supplemental memorandum that, "[a]t the time the trial court made its decision, the unemployment compensation the plaintiff received as temporary pandemic relief was before the court, but the fact that it was about to end does not appear to have been. . . . While it is true that these benefits are temporary, in a larger sense all income is temporary. Even salaried employment can end abruptly and unexpectedly. While it does not appear of record that the trial court knew at the time of its decision that these benefits were temporary and about to end, what matters is that the plaintiff did receive them and they

were income." The defendant further contends that, because of the way unemployment benefits are calculated, "they are an appropriate stand-in for the employment income he had earned before he became unemployed, and might expect to earn again when he is no longer unemployed."

We begin with the standard of review and relevant legal principles. "[Section] 46b-82 governs awards of alimony. That section requires the trial court to consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties . . . . In awarding alimony, [t]he court must consider all of these criteria." (Internal quotation marks omitted.) *Kovalsick* v. *Kovalsick*, 125 Conn. App. 265, 271, 7 A.3d 924 (2010).

"An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Steller* v. *Steller*, 181 Conn. App. 581, 587–88, 187 A.3d 1184 (2018). "[I]t is generally uncommon for a reviewing court to determine that the trial court has abused its broad discretion in deciding whether to award alimony and otherwise craft financial orders in a dissolution decree. Reluctance to reverse the trial court's exercise of discretion, however, should not mean that the door is entirely closed to successful appeals in dissolution cases. . . . Our appellate courts have reversed excessive or inequitable financial orders. See *Greco* v. *Greco*, 275 Conn. 348, 356–60, 880 A.2d 872 (2005) (reversing financial orders when 98.5 percent of marital property and substantial alimony awarded to one spouse); *Pellow* v. *Pellow*, 113 Conn. App. 122, 129, 964 A.2d 1252 (2009) (reversing financial orders when orders consumed 90 percent of paying spouse's income)." (Citation omitted; internal quotation marks omitted.) *Wiegand* v. *Wiegand*, 129 Conn. App. 526, 536–37, 21 A.3d 489 (2011).

In its decision, the court found that the plaintiff had been earning income ranging from $3000 to $7000 per month.[4] The court clarified in its December 19, 2022 articulation that, in calculating the plaintiff's alimony obligation, it had considered the funds that the plaintiff had received as temporary pandemic unemployment assistance, totaling approximately $16,085. Exhibit I, on which the court relied to determine the amount of the plaintiff's income and the award of alimony, makes clear the excessive nature of the alimony award. Exhibit I shows that the deposits and additions into the plain-

tiff's checking account varied from approximately $1500 to $3000 per month from mid-December, 2019, until mid-June, 2020. Beginning in mid-June, 2020, the plaintiff's checking account began showing an increase in total deposits due to the receipt of unemployment compensation benefits. The plaintiff testified that he had received pandemic assistance, which he deposited into his checking account. The plaintiff's checking account shows deposits for unemployment compensation in almost every month from mid-June, 2020, through mid-July, 2021, which was the final checking account statement included in exhibit I before trial was held in August, 2021.

One of the factors in § 46b-82 that a court is required to consider when fashioning alimony orders is the "amount and sources of income . . . ." In dissolution of marriage proceedings, the concept of income is defined "broadly so as to include in income items that increase the amount of resources available for support purposes." *Unkelbach* v. *McNary*, 244 Conn. 350, 360, 710 A.2d 717 (1998). Defining income broadly in dissolution of marriage proceedings "is consistent with our approach of includ[ing] in income items that increase the amount of resources available for support purposes. . . . Indeed, [our Supreme Court has] held that, even gifts, *if received regularly and consistently*, whether in the form of contributions to expenses or otherwise, are properly considered in determining alimony awards to the extent that they increase the amount of income available for support purposes. . . . For example, Black's Law Dictionary defines income as [t]he money or other form of payment that one receives, usu[ally] periodically, from employment, business, investments, royalties, gifts, and the like. Black's Law Dictionary (11th Ed. 2019) p. 912. Another dictionary defines income as something that comes in as an increment or addition usu[ally] by chance . . . a gain or recurrent benefit that is usu[ally] measured in money and for a given period of time . . . . Webster's Third New International Dictionary (2002) p. 1143 . . . .

"Despite the generally expansive meaning of the term, not every receipt of funds will be considered income." (Citations omitted; emphasis added; internal quotation marks omitted.) *Birkhold* v. *Birkhold*, 343 Conn. 786, 796–97, 276 A.3d 414 (2022). "The particular items to be included in income are likely to vary from case to case. For the most part there are no broad rulings or generalizations as to whether particular items will or will not be included in income, leaving the trial courts with wide discretion to evaluate the individual circumstances in each case." (Internal quotation marks omitted.) A. Rutkin et al., 8 Connecticut Practice Series: Family Law and Practice with Forms (3d Ed. 2010) § 33:11, p. 54.

The broad, yet not limitless, definition of income does

not include the temporary pandemic unemployment assistance benefits received by the plaintiff. Those benefits do not occur with enough regularity due to their temporary nature and cannot form the basis for determining the amount of income available for support purposes for the ten year alimony award. See *Unkelbach* v. *McNary*, supra, 244 Conn. 362 (regular contributions increase amount of income available for support purposes). When we subtract the plaintiff's temporary pandemic unemployment assistance benefits from the calculation, the court's order requiring the plaintiff to pay $1500 per month in alimony would consume most of the plaintiff's income. This is contrary to "the long settled principle that the [plaintiff's] ability to pay is a material consideration in formulating financial awards." (Internal quotation marks omitted.) *Pellow* v. *Pellow*, supra, 113 Conn. App. 129. The order is "irreconcilable with the principle that alimony is not designed to punish, but to ensure that the former spouse receives adequate support. . . . [I]t is hornbook law that what a spouse can afford to pay for support and alimony is a material consideration in the court's determination as to what is a proper order . . . ." (Citations omitted; internal quotation marks omitted.) *Greco* v. *Greco*, supra, 275 Conn. 361–62.

The defendant contends that the plaintiff's temporary pandemic unemployment assistance benefits properly were included as income because there was no indication that the trial court was aware at the time of its decision that those benefits were temporary. We are unpersuaded. Although the last statement of the status of the plaintiff's checking account in exhibit I included within it a deposit for temporary pandemic unemployment assistance benefits, nothing in the court's decision or articulation indicates that it assumed that the plaintiff would continue to receive temporary pandemic unemployment assistance benefits for the ten year duration of the alimony award. Both common knowledge at the time of the court's August, 2021 decision[5] as well as common sense indicate that the plaintiff would stop receiving temporary pandemic unemployment assistance benefits soon after the court's August 27, 2021 order of a ten year alimony award. "[Triers of fact] are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand . . . ." (Internal quotation marks omitted.) *In re Kristy A.*, 83 Conn. App. 298, 316, 848 A.2d 1276, cert. denied, 271 Conn. 921, 859 A.2d 579 (2004). Additionally, the defendant's argument that the plaintiff's temporary pandemic unemployment assistance benefits are an "appropriate stand-in" for the income earned by the plaintiff when employed ignores the court's finding that the monies received by the plaintiff as temporary pandemic unem-

ployment assistance constituted income to the plaintiff; it did not find that the temporary pandemic unemployment assistance benefits received by the plaintiff represented his earning capacity. See, e.g., *Milazzo-Panico* v. *Panico*, 103 Conn. App. 464, 468, 929 A.2d 351 (2007) (under certain circumstances, earning capacity may constitute basis for financial orders).

In light of our conclusion that the court abused its discretion in fashioning the alimony award, we remand the case for a new trial on all financial orders. "Financial orders in dissolution proceedings often have been described as a mosaic, in which all of the various financial components are carefully interwoven with one another. . . . Because the court's support orders, particularly its spousal support or alimony order, are informed by and reflective of the parties' incomes and assets, as affected by the court's other financial orders, the entirety of the mosaic must be refashioned whenever there is error in the entering of any such interdependent order." (Citation omitted.) *O'Brien* v. *O'Brien*, 138 Conn. App. 544, 555, 53 A.3d 1039 (2012), cert. denied, 308 Conn. 937, 66 A.3d 500 (2013). "[O]ur courts have utilized the mosaic doctrine as a remedial device that allows reviewing courts to remand cases for reconsideration of all financial orders even though the review process might reveal a flaw only in the alimony, property distribution or child support awards." (Internal quotation marks omitted.) *Keusch* v. *Keusch*, 184 Conn. App. 822, 825–26, 195 A.3d 1136 (2018). "[W]hen an appellate court reverses a trial court judgment based on an improper alimony, property distribution, or child support award, the appellate court's remand typically authorizes the trial court to reconsider all of the financial orders." (Internal quotation marks omitted.) *Morris* v. *Morris*, 262 Conn. 299, 307, 811 A.2d 1283 (2003).

The judgment is reversed only as to the financial orders, and the case is remanded for a new trial on all financial issues; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] Because we agree with the plaintiff's first claim regarding the alimony award and reverse in part the judgment and remand the case for reconsideration of all the financial orders, we need not reach his additional claims challenging the court's financial orders.

[2] On September 15, 2021, the plaintiff filed in the trial court an amended motion to stay alimony payments and attorney's fees pending the outcome of this appeal. The court denied the motion on November 2, 2022. On November 16, 2022, the plaintiff filed with this court a motion for review of the trial court's decision denying his motion for a stay. On that same day, the plaintiff also filed with this court an emergency motion for a stay of his periodic alimony obligation until the resolution of his motion for review of the trial court's November 2, 2022 order denying his motion for a discretionary stay. On November 17, 2022, this court granted the plaintiff's motion for a stay pending our resolution of the plaintiff's motion for review of the trial court's order denying his motion for a discretionary stay. On January 12, 2023, we granted the plaintiff's motion for review and granted relief, ordering that the plaintiff's periodic alimony obligation shall be stayed pending the final resolution of this appeal.

[3] We note that, despite the pending nature of the motion to reargue/

reconsider, which was filed after the timely filing of the present appeal, a final judgment exists for purposes of this appeal. "[W]hen a timely appeal has been filed before a motion to open has been filed . . . there is an effective, final judgment at the time of the appeal, and thus [an appellate] court has jurisdiction to consider the appeal. . . . [B]ecause we may suspend the exercise of our jurisdiction while a trial court resolves a matter necessary to the proper resolution of the appeal, the granting of a motion to open while the appeal is pending does not divest us of jurisdiction to consider the appeal upon the resolution of that motion. . . . [T]he same principles apply to a motion to reargue. In fact, these principles arguably apply with even greater force to a motion to reargue because, unlike the granting of a motion to open, the granting of a motion to reargue a judgment does not alter the judgment." (Citations omitted; internal quotation marks omitted.) *Paniccia* v. *Success Village Apartments, Inc.*, 215 Conn. App. 705, 716 n.11, 284 A.3d 341 (2022).

[4] We note that the plaintiff does not claim that the court improperly relied on his gross rather than net income.

[5] A news release posted on the website of the United States Department of Labor on April 5, 2020, titled U.S. DEPARTMENT OF LABOR PUBLISHES GUIDANCE ON PANDEMIC UNEMPLOYMENT ASSISTANCE, available at https://www.dol.gov/newsroom/eta/eta20200405 (last visited February 14, 2023), provides that "[t]he U.S. Department of Labor today announced the publication of Unemployment Insurance Program Letter (UIPL) 16-20 providing guidance to states for implementation of the Pandemic Unemployment Assistance (PUA) program. Under PUA, individuals who do not qualify for regular unemployment compensation and are unable to continue working as a result of COVID-19, such as self-employed workers, independent contractors, and gig workers, are eligible for PUA benefits. This provision is contained in Section 2102 of the Coronavirus Aid, Relief, and Economic Security Act (CARES) Act enacted on March 27, 2020.

"PUA provides up to 39 weeks of benefits to qualifying individuals who are otherwise able to work and available for work within the meaning of applicable state law, except that they are unemployed, partially unemployed, or unable or unavailable to work due to COVID-19 related reasons, as defined in the CARES Act."

A subsequent news release by the United States Department of Labor, titled U.S. DEPARTMENT OF LABOR ISSUES NEW GUIDANCE TO STATES ON IMPLEMENTING AMERICAN RESCUE PLAN ACT UNEMPLOYMENT INSURANCE PROVISIONS, available at https://www.dol.gov/newsroom/releases/eta/eta20210316 (last visited February 14, 2023), and dated March 16, 2021, which date was prior to the court's August, 2021 decision, stated that pandemic unemployment assistance and pandemic emergency unemployment compensation were extended through September 6, 2021. A court may take judicial notice without the request of a party and without notice to the parties for matters of established fact, the accuracy of which cannot be questioned. *W. K.* v. *M. S.*, 212 Conn. App. 532, 539–40, 275 A.3d 232 (2022).