J-S26043-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER ANTHONY TAYLOR | : | |
| | : | |
| Appellant | : | No. 1576 MDA 2020 |

Appeal from the PCRA Order Entered December 9, 2020
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0003093-2012

BEFORE: STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED: NOVEMBER 22, 2021**

Christopher Anthony Taylor ("Taylor") appeals from the Order denying his first Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"). **See** 42 Pa.C.S.A. §§ 9541-9546. We affirm.

In its Opinion, the PCRA court summarized the factual history as follows:

> The [v]ictim, K.M. [(the "victim")], took the stand and testified that, while in eighth grade, she became a member of the Dillsburg Citizen's Hose Company #1 in March of 2010. Victim met [Taylor, a 24-year-old adult male,] through the fire company. [Taylor] obtained the [v]ictim's phone number and the two began talking and texting regularly. [Taylor] began by asking the [v]ictim demographic questions and queried her about her interest in the fire department. [Taylor] was informed that the [v]ictim was 14[ years old]. Nonetheless, [Taylor] asked her about her sexual experiences and whether she would like to hang out. [Taylor] asked the [v]ictim if she was willing to participate in sexual activity with him and she agreed. The [v]ictim testified that they began engaging in sexual acts around June of 2010 in [Taylor]'s home. [The victim] testified that[,] during one incident[, Taylor] was nude on his bed and told her that she could try something if she wanted to. [The victim] then performed oral

sex on [Taylor]. After this [incident], [the victim] and [Taylor] began having sex daily. [She] testified that, during the course of their sexual relationship, [Taylor] wore a condom approximately ten times before dispensing with them. [The victim] testified that [Taylor]'s penis has a blemish on the left side. She also testified that [Taylor] is uncircumcised.

After discontinuing the usage of condoms, [Taylor] resorted to the ["]pullout method["]. This led to a pregnancy scare that passed[,] following the victim's resumption of [her] period[.] Additionally, there were three at-home pregnancy tests procured by [Taylor], which returned negative results.

The victim testified that their sexual relationship lasted about a year-and-a-half. [She] told one friend, N.W., about her sexual liaisons with [Taylor]. N.W. later testified about a conversation that she believed occurred around Christmas time of the girls' ninth grade years. N.W. testified that [the victim] related to [N.W.] that [the victim] was having a sexual relationship with [Taylor]. The [two] later discussed [the victim] observing other women's vehicles parked at [Taylor's] home.

[In September 2011,] Heidi Tucker [("Tucker")], an extended relative of [victim]'s, observed [the victim] sneaking out of the antique shop that was under [Taylor]'s apartment [(the "September Incident")]. [] Tucker contacted [the victim]'s twin sister[,] who informed [] Tucker that it was [the victim] who had been sneaking out. [S.M.], [the victim]'s mother [("Mother")], testified that she had suspicions about [the victim]'s relationship with [Taylor,] because [the victim] had ceased being truthful. In May of 2011, [Taylor] contacted [Mother] to collect her daughter from his residence…. [Mother observed] that [Taylor and the victim] were always texting…. [Mother] did not report anything in an attempt to shield her daughter from being involved in the criminal justice process that eventually transpired. [Mother] testified that the activity seemed to abate; however, when it started up again, [Mother] contacted the authorities.

Sergeant John Schreiner[] of the Carroll Township Police, testified that cell phone records[, from the victim's three phones,] were obtained. The CD of records obtained from AT&T contained 4,000 pages of records. These records revealed more than 50 phone calls between [Taylor] and the [v]ictim…. [T]he phone

records contained some 4,021 pages, detailing some 115,243 items….

PCRA Court Opinion, 2/24/21, at 3-5 (citations omitted).

On March 6, 2013, following a jury trial, Taylor was convicted of one count each of statutory sexual assault, aggravated indecent assault—less than 16 years of age, indecent assault—less than 16 years of age, unlawful contact with a minor—sexual offenses, involuntary deviate sexual intercourse—less than 16 years of age, and corruption of minors.[1] On June 17, 2013, the trial court sentenced Taylor to an aggregate term of ten to twenty years in prison.

On direct appeal, this Court determined that Taylor's claims were without merit, but vacated his judgment of sentence and remanded for a new sentencing hearing due to the trial court's erroneous imposition of mandatory minimum sentences. *See Commonwealth v. Taylor*, 125 A.3d 439 (Pa. Super. 2015) (unpublished memorandum). Subsequently, the Pennsylvania Supreme Court denied Taylor's Petition for allowance of appeal. *See Commonwealth v. Taylor*, 134 A.3d 56 (Pa. 2016). On February 3, 2017, the trial court resentenced Taylor to an aggregate term of eight to sixteen years in prison.

On February 15, 2017, Taylor, *pro se*, filed his first PCRA Petition. The PCRA court appointed Taylor counsel. After several continuances, Taylor filed

---

[1] 18 Pa.C.S.A. §§ 3122.1, 3125(a)(8), 3126(a)(8), 6318(a)(1), 3123(a)(7), 6301(a)(1)(ii).

a *pro se* Motion for new counsel, which the PCRA court granted. The PCRA court appointed Richard Robinson, Esquire ("Attorney Robinson"), as Taylor's new PCRA counsel. Attorney Robinson did not file an amended petition. After subsequent continuances, the PCRA court conducted evidentiary hearings on February 1, 2019, and March 29, 2019. At the close of the hearings, the PCRA court ordered additional briefing, and the parties complied, after which the PCRA court denied Taylor's PCRA Petition.

Taylor filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

Taylor now raises the following claims for our review:

[1.] Whether trial counsel was ineffective in failing to object with specificity to email communications presented at trial for lack of authentication[?]

[2.] Whether trial counsel was ineffective in failing to introduce a Facebook post at trial wherein the victim stated she and [Taylor] did not have sexual relations[?]

[3.] Whether trial counsel was ineffective in failing to sufficiently present evidence/argument that [Taylor] was circumcised[,] when the victim testified he was uncircumcised[?]

[4.] Whether trial counsel was ineffective in failing to subpoena records from [P]lanet [F]itness and Dillsburg Fire and EMS[?]

[5.] Whether trial counsel was ineffective in failing to object to the prosecutor's closing argument[,] which mischaracterized the trial evidence[?]

[6.] Whether trial counsel was ineffective in failing to raise prosecutorial misconduct[,] when the Commonwealth did not disclose all phone evidence (victim's SIM card) regarding phones used/owned by the alleged victim[?]

[7.] Whether trial counsel was ineffective based upon cumulative ineffective assistance of counsel, and other claims of ineffective assistance of counsel[?]

Brief for Appellant at 4 (issues reordered).

We adhere to the following standard of review:

> We review an order denying a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

Taylor's claims challenge the effectiveness of his trial counsel. To prevail on a claim of ineffective assistance of counsel under the PCRA, a petitioner must plead and prove, by a preponderance of the evidence, that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). Specifically,

> [t]o be entitled to relief on an ineffectiveness claim, a PCRA petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. *Commonwealth v. Chmiel*, … 30 A.3d 1111, 1127 (Pa. 2011)

- 5 -

(employing ineffective assistance of counsel test from ***Commonwealth v. Pierce***, … 527 A.2d 973, 975-76 (Pa. 1987)). Counsel is presumed to have rendered effective assistance. Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. Finally, because a PCRA petitioner must establish all the ***Pierce*** prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis.

***Commonwealth v. Treiber***, 121 A.3d 435, 445 (Pa. 2015) (footnote and some citations omitted).

In his first claim, Taylor argues that his trial counsel rendered ineffective assistance by failing to object to the authenticity of the email communications between himself and the victim. Brief for Appellant at 12-13. Taylor asserts that, at trial, he testified that he did not recognize the emails. ***Id.*** Additionally, Taylor claims that the only authentication of the emails was that the victim had provided them to the police, who performed no examination of the victim's or Taylor's respective computers. ***Id.*** at 13. Taylor acknowledges that trial counsel objected to the emails at trial, but contends that the objection was generic and did not specifically challenge the authenticity of the emails. ***Id.*** at 12-14. Taylor claims that trial counsel had no reasonable basis for failing to object to the authenticity of the emails. ***Id.*** at 14. Additionally, Taylor posits that this claim has arguable merit, because there is no proof that Taylor was the one writing the emails. ***Id.*** at 14-15.

Here, Taylor fails to develop the prejudice prong of his ineffectiveness claim. ***See Commonwealth v. Wholaver***, 177 A.3d 136, 144 (Pa. 2018)

(stating that "[a] PCRA petitioner must address each of the[ ineffective assistance of counsel] prongs on appeal"). Indeed, in Taylor's appellate brief, he devotes almost his entire argument to whether his claim has arguable merit, save for the final paragraph where he baldly asserts he suffered prejudice due to this alleged failure, as well as several others discussed *infra*. *See* Brief for Appellant at 15; *see also Commonwealth v. Paddy*, 14 A.3d 431, 443 (Pa. 2011) (providing that "boilerplate allegations and bald assertions … cannot satisfy a petitioner's burden to prove that counsel was ineffective."); *Wholaver*, *supra*. Accordingly, Taylor has failed to establish his claim of ineffective assistance of counsel.[2]

In his second claim, Taylor contends that his trial counsel rendered ineffective assistance by failing to introduce a Facebook post,[3] authored by

_____

[2] Moreover, our review of the record confirms that the PCRA court did not abuse its discretion in determining that Taylor had failed to demonstrate prejudice with regards to his first claim. *See* PCRA Court Opinion, 12/8/20, at 18-19 (wherein the PCRA court concluded that the "evidence presented against [Taylor] was overwhelming."); *see also id.* at 3-8, 10-18 (wherein the PCRA court summarized all of the testimony and exhibits from trial including, but not limited to, the thousands of text messages between Taylor and the victim, the witnesses who saw the victim leaving Taylor's house at night, and the victim's testimony regarding her sexual encounters with Taylor). Thus, viewed in the light most favorable to the Commonwealth as the prevailing party, the record reveals that the contents of the emails were merely cumulative of the victim's testimony, the witness' testimony, and the other exhibits presented by the Commonwealth. *Id.* Accordingly, Taylor is not entitled to relief on this claim.

[3] Taylor refers to this as a "Facebook post;" however, it is actually a private message between the victim and Taylor's mother. *See* PCRA Petition, 2/15/17, Defendant's PCRA Exhibit 1; Brief for Appellant, Exhibit 1.

the victim, which purportedly states that the victim and Taylor did not have sexual relations. Brief for Appellant at 15-16. Taylor argues that his mother received this message before the start of trial, and that it "could have been authenticated" by trial counsel. *Id.* at 16. Taylor argues that this message is "clearly exculpatory" and relevant to his case and, thus, his trial counsel had no reasonable basis in failing cross-examine the victim about the message. *Id.* at 17-18.

The PCRA court addressed this claim as follows:

The entirety of the communication reads as follows:

* * *

Laura,
As you can see my parents are making sure that [Taylor] isn't with me, I can't do anything for him accept [*sic*] go against my parents and **say we didn't have sex which I am prepared to do. I don't want to see him go to jail** but I can't stop them from reporting it. You have to understand though that **it was him who wouldn't stop talking to me** and it got us both in trouble, **we just needed a few more years but he didn't like when I got another boyfriend**. I did that to keep him safe from this but **he continued to contact me** and my parents got tired of. [*sic*] I want to help him[,] honestly I do, I don't know if the court will listen to me when I tell them we didn't have sex. … I'm so sorry about this, but it isn't entirely my fault, **you can see that he isn't innocent in this**, but I don't know what else to do.

Defendant's PCRA Exhibit 1 (emphasis added). The tone and tenor of this message is dripping with allusions to a romantic relationship existing between [Taylor] and a minor child. The victim labels [Taylor as] a boyfriend by dint of her statement that [Taylor] did not like it when the victim got "another boyfriend." The victim never explicitly states that [Taylor] did not have sex with her; but, rather, she states that she will say that they did not

engage in coitus. Why [Taylor] would wish [these] highly prejudicial statements … to be entered into a trial against him is unfathomable…. The inference that can be drawn from the line in which the victim states that she will say that the pair did not engage in intercourse is especially weak when juxtaposed with the assertion by the victim that [Taylor] is not innocent in the matter. There is no arguable merit.

PCRA Court Opinion, 12/8/20, at 37-38 (footnote omitted, emphasis in original).

Our review of the record confirms the PCRA court's analysis and determinations. Indeed, the PCRA court's determinations that the message does not exonerate Taylor, but rather conveys that Taylor did have sex with the victim, and that the victim was willing to lie about the sexual relationship, are logically sound inferences. *See id.* Because introduction of this message into evidence would damage, rather than aid, Taylor's case at trial, there is no arguable merit to Taylor's ineffectiveness claim. *See Treiber*, *supra*. Accordingly, we grant Taylor no relief on this claim.

In his third claim, Taylor contends that his trial counsel rendered ineffective assistance by failing to adequately challenge the victim's statement that Taylor was uncircumcised. Brief for Appellant at 20-25. Taylor asserts that, at trial, the victim falsely testified that Taylor was uncircumcised, despite having "sex with [Taylor] on approximately 545 occasions[.]" *Id.* at 21-22. Taylor contends that it is "simply not possible that [the victim] could be having sex with [Taylor] for a year[-]and[-]a[-]half and not know whether he was circumcised." *Id.* at 21. Taylor argues that trial counsel failed to argue this

discrepancy in his closing arguments and, thus, rendered ineffective assistance. *Id.* at 21-22. Additionally, Taylor asserts that if his trial counsel "[h]ad … presented more evidence establishing [that Taylor] was circumcised … the outcome very well may have been different." *Id.* at 22.

In its Opinion, the PCRA court determined that Taylor's trial counsel had a reasonable basis for not calling the jury's attention to the discrepancy regarding Taylor's alleged circumcision. *See* PCRA Court Opinion, 12/8/20, at 21. In particular, the PCRA court determined that Taylor's new, alternative, strategy did not offer a *substantially* greater chance of success. *Id.* at 20-21. Trial counsel testified, at the PCRA hearing, that his strategy was to minimize all references made to Taylor's genitals, as he had concerns that repeated reference to Taylor's genitals in and around, a 14-year-old-girl may inflame the jury against Taylor. *Id.*; *see also* N.T. (PCRA Hearing), 3/29/19, at 17-18. Furthermore, at the PCRA hearing, Taylor failed to present any medical testimony or proof of his circumcision. Moreover, as the PCRA court noted in its Opinion, the victim testified at trial that Taylor was uncircumcised, and Taylor testified at trial that he is circumcised. *See* PCRA Court Opinion, 12/8/20, at 20-22. Thus, this evidence was already presented to the jury and the jury chose to believe the victim and not Taylor. *Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011) (stating that "the jury … is free to believe all, part, or none of the evidence."). Accordingly, we conclude that

Taylor has failed to demonstrate that his trial counsel lacked a reasonable basis for his chosen course of action and, thus, this claim fails.

In his fourth claim, Taylor argues that his trial counsel rendered ineffective assistance by failing to subpoena Taylor's employment records from Planet Fitness and Dillsburg EMS. Brief for Appellant at 26. Taylor contends that he had a "situational alibi as to certain dates that the victim said they were together[,]" and the employment records would have disproven the victim's testimony. *Id.* at 22-23. Taylor acknowledges that his trial counsel *did* subpoena employment records from December 2011, but contends that trial counsel should have requested employment records dating back to September 2011. *Id.* Taylor additionally acknowledges that the employment records no longer exist. *Id.* at 26-27. Nevertheless, Taylor asserts that this claim has arguable merit, because these records would have disproven the victim's statements with regard to the September Incident.[4] *Id.*

In its Opinion, the PCRA court addressed this claim as follows:

> [Trial counsel]'s request for Planet Fitness records from December of 2011 to December of 2012 did not align with the potential dates of the incident [] Tucker recounted, which seems to have occurred at some point in September of 2011. [Taylor] testified[, at the PCRA hearing,] that he was working third shift during this time period and that the wrong records were subpoenaed. In answering that he had become a full-time third-shift employee, [Taylor] adopted [Attorney Robinson]'s underlying proposition that the Planet Fitness records needed for his claim no

---

[4] As noted *supra*, the "September Incident" refers to when Tucker witnessed the victim leaving the antique shop directly below Taylor's apartment. *See* PCRA Court Opinion, 12/8/20, at 4-5.

longer exist. Therefore, [Taylor] was … unable to demonstrate what the records in question would have established. Though it may be through no fault of his own, we are left with [Taylor]'s bald assertion as to what the records would have established. Moreover, [the PCRA court] agree[s] with the Commonwealth that the records would not have been inconsistent with the testimony of the other witnesses about the incident in September of 2011.

[Wherein the PCRA court summarized Tucker's testimony and highlighted that the September Incident occurred on a weekend.]

As the Commonwealth highlighted in [its M]emorandum [of Law], [Taylor] testified that if the September [incident] had occurred on a *weekday*[,] then he would have been at work; however, this does not speak to weekends. The Commonwealth also note[d] that [Taylor]'s PCRA [P]etition accords with his trial testimony and that it was only during the PCRA proceedings that [Taylor], responding to the Commonwealth's query covering the weekends, claimed to have worked during the relevant hours, roughly, seven days a week. … Unless the records would have established that [Taylor] worked third shift at Planet Fitness during the *weekends* of the relevant period, which would contradict his trial testimony and assertions of this PCRA [P]etition, then the Planet Fitness records were immaterial. Additionally … the victim's own testimony indicates that her liaisons with [Taylor] involved her sneaking out at nights *until such time as he began to work during the nighttime*[,] and then they began meeting during the daytime. As such, there is no merit to this claim.

PCRA Court Opinion, 12/8/20, at 10-13 (emphasis in original, citations omitted). Additionally, the PCRA court concluded, that Taylor's claim regarding the Dillsburg Fire and EMS employment records lacked merit, as they similarly no longer exist. *Id.* at 14-18. Further, the PCRA court concluded that Taylor's PCRA testimony was not credible. *See id.* at 12; *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015) (explaining that

when supported by the record "[t]he PCRA court's credibility determinations … are binding….").

Our review of the record confirms the PCRA court's findings, and its thorough analysis is sound. Accordingly, we conclude that Taylor has failed to establish that this claim has arguable merit. **See id.** at 10-18; **see also Treiber**, **supra**.

In his fifth claim, Taylor argues that his trial counsel rendered ineffective assistance by failing to object to the Assistant District Attorney's ("ADA") closing argument, in which the ADA mischaracterized trial testimony. Brief for Appellant at 29. Taylor asserts that the ADA mischaracterized a conversation between the victim and N.W. by stating that the victim told N.W. about the sexual relationships without prompting. **Id.** Taylor contends, however, that N.W. initiated the conversation and elicited false allegations from the victim that Taylor was having sex with the victim. **Id.** Taylor posits that trial counsel's failure to object resulted in improper bolstering of the victim's testimony. **Id.** at 29.

The PCRA court addressed this claim as follows:

> Regarding the conversation between the victim and [N.W.], the [ADA, at trial,] stated … "[N.W.] didn't say [']I'm having this relationship with my guy and we're having sex. What about you?[']" [Taylor] submits that the ADA switched the roles of the girls in the conversations.

* * *

The relevant portion of N.W.'s testimony is as follows:

- 13 -

[ADA]:  And what was the gist of the conversation?

N.W.:  Well, we both talked about how we had relationships, and I didn't know who she had a relationship with.  So I asked her and she told me about a guy from the fire hall, and I remembered him because I saw him at the fire hall because we would hangout [*sic*] there sometimes, because like her life was the fire hall.  And she told me if I remembered [] Taylor and I said yes, and we just went on from there.

[ADA]:  Okay.  And what was the on from there part?

N.W.:  Well, **she asked me** if I was doing things with my boyfriend and I told her I was.  And then she–and, **then I asked her** if she was doing anything with him and she said yes.

N.T. [(Jury Trial)], 3/6/13, at 132 (emphasis added).  It is clear from the context that … [t]he girls had a mutual conversation about their relationships[,] and the victim initiated the portion of the conversation in which the girls discussed what sexual acts they were performing within their respective relationships.  Moreover, as noted by the Commonwealth, the [] ADA had a right to respond to [trial] counsel's [closing] arguments.  In his closing, [trial] counsel had referred to the victim's statements to N.W. as the sort of "puffing" that teenagers do about their relationships.  Thus, the ADA was merely responding with a recounting of the testimony that was not a mischaracterization. The challenged statement was proper.

PCRA Court Opinion, 12/8/20, at 33-34 (some citations omitted, footnotes omitted).

Our review of the record confirms the PCRA court's analysis, and its conclusions are sound.  Accordingly, we can grant Taylor no relief on this claim.  *See Treiber*, *supra*.

In his sixth claim, Taylor contends that his trial counsel rendered ineffective assistance by failing to acquire the SIM card from the victim's cell

- 14 -

phones prior to trial. Brief for Appellant at 29. Taylor argues that "[i]f[,] in fact[,] exculpatory evidence is contained on the SIM card, it is a clear violation of **Brady v. Maryland**, 373 U.S. 83 (1963)." Brief for Appellant at 29. Taylor acknowledges that his trial counsel made several requests for "all information concerning the phones." **Id.** at 32. But, Taylor asserts that his trial counsel failed to object at trial when it became clear that "the victim [had] turned the SIM card over to police[.]" **Id.**

Preliminarily, we observe that this claim was not raised in Taylor's PCRA Petition before the PCRA court. Indeed, a review of Taylor's PCRA Petition reveals that Taylor claimed that the Commonwealth had committed prosecutorial misconduct by failing to provide Taylor with the SIM card in question prior to trial, and the PCRA court addressed *that* claim. **See** PCRA Petition, 2/15/17, at 33-39; PCRA Court Opinion, 12/8/20, at 39-42 (wherein the PCRA court addressed Taylor's *prosecutorial misconduct* claim); **see also id.** (wherein the PCRA court concluded that Taylor had waived his prosecutorial misconduct claim, because Taylor had, with regards to the underlying **Brady** claim, failed to plead and prove that he was unaware of the existence of the SIM card prior to trial, and had failed to prove that the SIM card would have exculpatory evidence on it). Taylor raised his ineffective assistance of counsel claim, regarding the SIM card, for the first time in his Rule 1925(b) Concise Statement. **See Commonwealth v. Lauro**, 819 A.2d 100, 103 (Pa. Super. 2003) (citation omitted) (stating that "issues not raised

in a PCRA [p]etition cannot be considered on appeal."); **see also**

**Commonwealth v. Williams**, 900 A.2d 906, 909 (Pa. Super. 2006) (stating

that "including an issue in a [Rule 1925(b)] Concise Statement does not revive

issues that were waived in earlier proceedings"); Pa.R.A.P. 302(a) (stating

that "[i]ssues not raised in the lower court are waived and cannot be raised

for the first time on appeal."). Accordingly, Taylor's claim is waived.

In his seventh claim, Taylor contends that the cumulative errors of his

trial counsel entitle him to a new trial. Brief for Appellant at 27-28. Taylor

argues that trial counsel, in addition to the claims discussed *supra*, failed to

file a motion to pierce the rape shield law, object to the ADA's closing

argument, challenge the Commonwealth's use of perjured testimony and

forged documents, and failed to request a missing witness instruction. **Id.** at

28. Taylor asserts that his trial counsel was ineffective with regards to each

of the above claims and he is therefore entitled to a new trial. **Id.** at 28-29.

When the failure of individual claims is not based upon a lack of
prejudice,

> [n]o number of failed claims may collectively warrant relief if they
> fail to do so individually…. [However, w]hen the failure of
> individual claims is grounded in lack of prejudice, then the
> cumulative prejudice from those individual claims may properly be
> assessed.
>
> However, while cumulative prejudice may properly be assessed
> with respect to individual claims that have failed due to lack of
> prejudice, nothing in our precedent relieves an appellant who
> claims cumulative prejudice from setting forth a specific,
> reasoned, and legally and factually supported argument for the

claim.  **A bald averment of cumulative prejudice does not constitute this claim.**

*Commonwealth v. Spotz*, 47 A.3d 63, 129 (Pa. 2012) (emphasis added).

Instantly, we, like the PCRA court, rejected almost all of Taylor's claims based on his failure to establish arguable merit.  *See* PCRA Court Opinion, 12/8/20, at 3-8, 10-19, 21, 33-34, 37-42.  Indeed, we rejected only one claim, Taylor's assertion that his trial counsel rendered ineffective assistance by failing to object to the authenticity of emails, on the basis of prejudice.  Furthermore, other than making bald assertions in his appellate brief, Taylor fails to demonstrate how trial counsel's alleged failings constituted cumulative prejudice.  Thus, we cannot grant Taylor relief on this claim.[5]  *See Spotz*, *supra*.

Based upon the foregoing, we conclude that the PCRA court properly denied Taylor's PCRA Petition, and we affirm its Order.

Order affirmed.

_____

[5] Moreover, we note that, other than the bald assertions listed above, Taylor's appellate brief is devoid of any claims regarding trial counsel's alleged failures to file a motion to pierce the rape shield law, challenge the Commonwealth's alleged use of perjured testimony and forged documents, nor any claims regarding a missing witness instruction.  Therefore, any challenge regarding these claims has been waived and plays no role in our analysis of cumulative error.  *See* Pa.R.A.P. 2119(a); *Johnson*, *supra*.

- 17 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/22/2021